## JUAN YGNACIO LABORDE *v.* THE CONSOLIDATED ASSOCIATION of the Planters of Louisiana.

In an action to recover a sum paid out by the bankers of the plaintiff on a check alleged by the latter to have been forged, the testimony of a witness, taken under commission declaring that he forged the check, will be admissible; the objection resulting from his confession, going to his credit, rather than to his competency. Even a verdict of guilty, not followed by judgment, is not sufficient to establish the infamy of the witness, and render him incompetent.

A banker who pays a forged check, must support the loss.

APPEAL from the Commercial Court of New-Orleans, *Watts*, J.

*F. B. Conrad*, for the plaintiff.

*Labauve*, for the appellants.

BULLARD, J. The defendants having rendered an account as the bankers of the plaintiff, in pursuance of an interlocutory judgment of the Commercial Court, a single item of it was contested by the plaintiff. That item was a sum of $1999,09 charged to have been paid on the plaintiff's check, dated June 13th, 1839. It is alleged by him that the check is not genuine, but a forgery, and that the loss must fall upon the bank. The Commercial Court, being satisfied that the check was forged, gave judgment against the bank, and it has appealed.

The evidence upon which the court came to this conclusion is two fold, resulting, first, from a comparison of the check in question with numerous others admitted to be genuine, and secondly from extraneous circumstances relating principally to the conduct of a clerk of the plaintiff by the name of Viaña, who disappeared soon after the presentation and payment of the check.

All the checks, twenty-two in number, came up with the record, and have been carefully compared by us. The most striking difference between the signature of the one in question, and that of all the others, is in the abreviation of the middle name of the plaintiff *Ygnacio*, which on the disputed check is written *Ygo*. whereas on all the others it is written *Ygno*. the letter *n* being entirely omitted. There is a difference also in the manner of dating the check. It is " 13*th of June*," while in all the others the preposition *of* is not used in designating the month. In all the others, also, in which the word hundred in employed it is written with a small *h*; in the disputed one it is written with a capital *H*. The flourish, a common appendage to a Spanish signature, is much larger than most of the others, and has fewer strokes of the pen. One witness testifies, and inspection confirms it, that Laborde's handwriting is more inclined.

It is shown that Viaña, who had been the clerk of the plaintiff, left New Orleans for New York shortly after the check was paid; and that, on the eve of his departure, on board the steam ship, he stated to an acquaintance, that he had a considerable sum of money about him concealed in his belt, and that he was going to em-

ploy it in the purchase of goods.   It is further proved that some time previously Viaña had imitated the signature of Laborde, his employer, and exhibited it to an acquaintance, who was introduced as a witness, who found it a good imitation of a signature which he knew to be an original.   Viaña then tore it up in very small fragments, which he threw carefully away behind some barrels in the store.   Being asked why he took so much pains to destroy the signature, he answered that Laborde was a very particular man, and would be displeased to see his signature lying about the counting house.

There is in our opinion nothing suspicious in the circumstance, that the plaintiff did not at once investigate the state of his account with the bank, when he was informed that it was overdrawn ; because it appears manifest from the bank book that the overdraft was not occasioned by the payment of the contested check.

When his book was afterwards balanced, and twenty-two checks handed to him in order to verify his account, he, within a few hours returned them to the bank, and pointed out the check which he alleged was spurious.   It is true that this was some time after the disappearance of Viaña ; but nothing shows that the plaintiff was previously aware of the existence of such a check.

But the plaintiff gave in evidence the deposition of Viaña himself, taken under a commission, who avows without hesitation that he counterfeited the signature of his employer, and drew the amount out of bank upon the forged check.   This deposition was read notwithstanding the objections of the defendants' counsel, that the very avowal of guilt on the part of the witness renders him infamous ; that he has placed himself beyond the reach of a prosecution for perjury by flying from justice ; and that the introduction of such evidence tends to encourage collusion, and subornation of perjury.   It is true that the testimony of such a witness adds nothing in our judgment, to the proof of the alleged fact.   *"Nemo allegans turpitudinem suam audiendus est."*   In a suspicious case it might even operate against the party calling such a witness.   But the objection goes rather to his credit than to his competency ; because his infamy, in a technical sense, results from his conviction of a crime.   Even a verdict of guilty, not followed by judgment, would not be sufficient to establish the

infamy of the witness, and render him incompetent. 2 Starkie on Evid. 714, *et seq.*

We do not discover any thing in the conduct of the plaintiff which should, in equity, throw upon him the loss resulting from the payment to his clerk of a forged check. The clerk does not appear, ever to have been trusted by the plaintiff with drawing checks, and signing the name of his employer. His employment was that usual with clerks in commercial houses ; and we are not prepared to say that under circumstances, such as are disclosed in this case, the loss ought to fall on the employer.

*Judgment affirmed.*