729 So.2d 1165 (1999)
CABLE CAST MAGAZINE
v.
PREMIER BANK, NATIONAL ASSOCIATION.
No. 98 CA 0676.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
James F. Abadie, Baton Rouge, for Plaintiff/Appellee Cable Cast Magazine.
Marc S. Whitfield, Brett A. Furr, Baton Rouge, for Defendant/Appellant Premier Bank, National Association.
Regina Hamilton, Baton Rouge, for Defendant/Appellant Premier Bank, National Association.
Before: CARTER, C.J., WHIPPLE, and FITZSIMMONS, JJ.
CARTER, C.J.
Plaintiff, Telemedia Publications, Inc. (Telemedia), sued Premier Bank, National Association, now Bank One, Louisiana, National Association (Bank One) for the improper *1166 payment of a number of checks indorsed by one of its employees and deposited into her personal account. Bank One appeals the judgment of the trial court in favor of Telemedia in the amount of $7,913.04.

FACTS
Telemedia publishes Cablecast Magazine (Cablecast), a weekly guide for the listings of the cable television programming in Baton Rouge. In 1994, Cablecast hired Jennifer Pennington as a temporary employee to replace another employee who had taken maternity leave. Pennington had previously worked for Cablecast for a few months in 1992. According to John McGregor, the majority stockholder of Telemedia, and manager of Cablecast, he had not experienced any problems with Pennington's prior employment.
According to McGregor, he noticed sometime in 1994, after he hired Pennington, shortages in revenue coming into Cablecast. McGregor became aware that Pennington had taken checks payable to Cablecast and deposited these checks into her personal account at Bank One. When confronted about her activities, Pennington admitted to taking the checks. At trial, McGregor agreed the amount of money Cablecast had lost through Pennington's activities was $7,913.04.
Cablecast filed suit against Bank One alleging Bank One violated LSA-R.S. 10:3-307 by allegedly accepting instruments with knowledge of Pennington's breach of her fiduciary duties to Cablecast. Bank One answered, denying liability and contending that Telemedia was solely responsible for losses caused by the fraudulent indorsements of its employees based on LSA-R.S. 10:3-405 and 10:3-406.
After a trial on the merits, in which only McGregor and Pennington testified, the trial court ruled in favor of Telemedia and awarded it $7,913.04. Bank One appeals the judgment.

DISCUSSION
The general rule established by long-standing jurisprudence is that when a depositary of money to be drawn upon checks pays on a forged check, it is liable for the amount of the checks, plus legal interest from the date of judicial demand. Stepter v. Hibernia National Bank, 524 So.2d 210, 211 (La.App. 4th Cir.1988) citing Etting v. Commercial Bank, 7 Rob. 459 (La.1844); Laborde v. Consolidated Association, 4 Rob. 190, 39 Am. Dec. 517 (La.1843). However, LSA-R.S. 10:3-405 applies to cases of fraudulent indorsements by employees and provides as follows:
(a) In this Section:
(1) "Employee" includes an independent contractor and employee of an independent contractor retained by the employer.
(2) "Fraudulent indorsement" means (i) in the case of an instrument payable to the employer, a forged indorsement purporting to be that of the employer, or (ii) in the case of an instrument with respect to which the employer is the issuer, a forged indorsement purporting to be that of the person identified as payee.
(3) "Responsibility" with respect to instruments means authority (i) to sign or indorse instruments on behalf of the employer, (ii) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition, (iii) to prepare or process instruments for issue in the name of the employer, (iv) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer, (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to act otherwise with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.
(b) For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert *1167 with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.
(c) Under Subsection (b), an indorsement is made in the name of the person to whom an instrument is payable if (i) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person.
According to the 1990 Uniform Commercial Code Comments, this provision is addressed to fraudulent indorsements made by an employee with respect to instruments to which the employer has given responsibility to the employee. Among the categories of fraudulent indorsements this provision covers are indorsements made in the name of the employer to instruments payable to the employer. This provision adopts the principle that the risk of loss for fraudulent indorsements by employees who are entrusted with responsibility with respect to checks should fall on the employer rather than the bank that takes the check or pays it, if the bank was not negligent in the transaction. This provision is based on the belief that the employer is in a far better position to avoid the loss by using care in choosing employees, in supervising them, and in adopting other measures to prevent forged instruments in the name of the employer. See 1990 Uniform Commercial Code Comments. § 3-405.
From a review of the record, we find LSA-R.S. 10:3-405 applies to this case of fraudulent indorsements. The evidence clearly established Pennington was an employee of Cablecast. Pennington committed fraudulent indorsements on checks payable to Cablecast when she indorsed the checks in her own name d/b/a Cablecast, instead of using the Cablecast stamp that she was instructed to use. By doing so, Pennington clearly represented her signature as that of her employer.
Pennington was also entrusted with "responsibility" as defined by LSA-R.S. 10:3-405(3). The testimony at trial established that among Pennington's duties was the authority to use the Cablecast indorsement stamp and prepare incoming subscription checks for deposit into the Telemedia account used by Cablecast at City National Bank (CNB). The fact that Pennington was never authorized to manually indorse checks payable to Cablecast does not defeat the application of this provision because she was still vested with authority to process instruments received for deposit into the account used by her employer. According to McGregor, Pennington's duties at Cablecast included opening the mail, indorsing subscription checks received in the mail with the Cablecast deposit stamp, preparing the pre-printed Cablecast deposit slip, and taking the checks to be deposited at CNB.
The employer must bear the loss under LSA-R.S. 10:3-405 upon a showing that an employee such as Pennington commits a fraudulent indorsement. However, Cablecast seeks to defeat the application of LSA-R.S. 10:3-405 by asserting that Bank One was not in good faith when it took the checks from Pennington. LSA-R.S. 10:1-201(19) defines good faith as honesty in fact in the conduct or transaction concerned, except as provided in R.S. 10:1-203. According to Cablecast, because Bank One had notice of Pennington's breach of fiduciary duty to Cablecast, this notice defeats the application of LSA-R.S. 10:3-405. The pertinent portions of LSA-R.S. 10:3-307 regarding notice of the breach of fiduciary duty provide as follows:
(a) In this Section:
(1) "Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.

*1168 (2) "Represented person" means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in Paragraph (1) is owed.
(b) If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:
(1) Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.
(2) In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.
Cablecast asserts that Bank One had notice of the breach of Pennington's fiduciary duty because Pennington deposited checks payable to Cablecast into her personal account at Bank One. Cablecast points to Pennington's testimony that a teller at Bank One instructed her how to indorse checks made payable to Cablecast so they could be deposited into Pennington's personal account. Pennington also testified that a branch manager at Bank One told her she would need a permit if she wanted to continue to deposit checks payable to Cablecast. However, no evidence was presented regarding what type of permit Pennington would have needed. Bank One argued in its brief to this court that there is no such requirement in existence for endorsing "d/b/a" checks.
In response, Bank One contends that Cablecast had not been reserved as a trade name by Telemedia with the Secretary of State, thus no inquiry would have revealed that Pennington was not Cablecast to trigger the notice provisions of LSA-R.S. 10:3-307(b)(2) when Pennington deposited checks made payable to Cablecast into her personal account. Further, Bank One argues it did not have actual knowledge that Pennington was a fiduciary of Cablecast. Knowledge as defined in LSA-R.S. 10:1-201(25)(c) constitutes actual knowledge of a fact. The record reflects the only actual knowledge Bank One had was that Pennington identified herself as doing business as Cablecast.
We find it was error to conclude Bank One was not in good faith. Pennington testified she represented to Bank One that she was Cablecast. Cablecast did not offer any evidence that Bank One knew that Pennington was not Cablecast. Telemedia had not reserved any rights to the Cablecast name, and Telemedia had its business accounts at a different bank. Moreover, Pennington testified she did not inform anyone at Bank One that Telemedia owned or had any relationship with Cablecast.
Having concluded that Bank One was in good faith, the next issue is whether Cablecast is able to shift the loss it suffered through Pennington's activities to Bank One under LSA-R.S. 10:3-405 by proving Bank One did not exercise ordinary care in taking the checks payable to Cablecast and depositing them into Pennington's account. Even if Cablecast was negligent, Bank One could still be liable if it failed to exercise ordinary care. Stated another way, Cablecast is not prevented from shifting the loss to Bank One based on Bank One's failure to exercise ordinary care, regardless of whether Cablecast was negligent. See 1990 Uniform Commercial Code Comment.
LSA-R.S. 10:3-103(a)(7) defines ordinary care in the case of a person engaged in business as the observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged. The record does not contain any evidence regarding what reasonable commercial standards were in place with respect to Bank One's allowing Pennington to indorse checks payable to Cablecast by signing her own name and adding "d/b/a Cablecast." We cannot say Telemedia *1169 proved Bank One did not observe reasonable commercial standards.

CONCLUSION
For the above and foregoing reasons, we find the trial court erred in rendering judgment in favor of Telemedia and against Bank One for the forged indorsements. LSA-R.S. 10:3-405 is applicable and Telemedia did not defeat that application by proving Bank One was not in good faith in the transaction. Particularly, Telemedia did not prove Bank One had notice that Pennington breached her fiduciary duty to Cablecast. Further, Telemedia did not prove Bank One failed to exercise ordinary care in taking checks payable to Cablecast and indorsed by Pennington doing business as Cablecast, which would allow the loss to be shifted to Bank One.
The judgment of the trial court is reversed. All costs of this appeal are assessed against Telemedia Publications, Inc.
REVERSED.