OPINION OF THE COURT
RENDELL, Circuit Judge.
Appellee/Plaintiff Schrier Brothers, a division of Bunzel Distribution Northeast, LLC, brought this action against Appellant/Defendant Hudson United Bank (“HUB”) and other Defendants seeking damages for the conversion of six checks payable to Schrier Brothers by its former employee Harvey Golub. Golub, a salesperson, fraudulently indorsed checks collected from his customers and deposited them in his own commercial account with HUB. The District Court granted summary judgment to Schrier Brothers. On appeal, HUB’s principal argument is that the District Court erred in its ruling because Golub was an employee with “responsibility” over the checks within the meaning of N.J. Stat. Ann. § 12A:3-405 (corresponding to Uniform Commercial Code § 3-405) and, therefore, the loss may fall on Schrier Brothers.
The District Court had jurisdiction pursuant to 28 U.S.C. § 1334(b), as this case was related to Golub’s bankruptcy proceeding. We have jurisdiction over this appeal of a final judgment and order by the District Court pursuant to 28 U.S.C. § 1291. Because we believe the District Court erred in concluding that Golub was not an employee entrusted with responsibility with respect to the checks under N.J. Stat. Ann. § 12A:3-405, we will reverse and remand.
I.
The facts of this case are relatively straightforward. Harvey Golub worked as a salesperson for Schrier Brothers, a *486 wholesaler of paper products and janitorial supplies. Golub’s responsibilities included locating new potential customers and servicing existing customers by going to their places of business, taking orders, and selling new products. Schrier Brothers’ customers typically paid for orders by mailing a check to the company’s “lockbox,” where bookkeeping staff would receive and process payments. Customers could, however, also tender payment by check or cash to salespersons, like Golub, or to the drivers who delivered orders. When drivers accepted payments, they were instructed to bring them back to the office, as drivers would typically leave from and return to the office each day. When salespersons accepted payments, however, they were instructed to send them directly to the lockbox by express mail, as salespersons did not necessarily return to the office each day. For cash payments, salespersons were instructed to obtain and mail a money order to the lockbox, rather than sending cash. Payment to salespersons and drivers was not encouraged by Schrier Brothers, but the company offered this alternative form of payment as an accommodation to its customers, and this method of payment was favorable with and frequently used by Schrier Brothers’ “street business” customers, e.g., smaller retailers, as opposed to its larger distributor or wholesale customers.
In November 2001, Golub received six checks from customers, made payable to Schrier Brothers, totaling $121,614.43. Instead of mailing the checks directly to the lockbox, Golub deposited them in an account maintained by a company he owned, H & H Food Brokers, at HUB. Golub indorsed each check with the words “Schrier Brothers Inc” or “Schrier Brothers” and the account number of his H & H account. HUB accepted the checks for deposit, deposited them into the H & H account, and sometime following HUB’s acceptance, the drawee banks made payment to HUB for the face amounts of the checks.
Since the fraud was exposed, Golub has reimbursed Schrier Brothers in the amount of $18,895.67; Schrier Brothers now seeks to recover the remaining $102,718.76. The action was originally brought in the Superior Court of New Jersey for fraud and conversion against Golub, negligence and conversion against the drawee banks, and fraud, negligence, and conversion against HUB. Eventually the action was removed to federal court.
The District Court granted summary judgment for Schrier Brothers on its claims against HUB and dismissed the complaint with prejudice as against the drawee banks. Interpreting N.J. Stat. Ann. § 12A:3-405, the District Court concluded that Golub did not have “responsibility” for the checks because he had limited access to them and was “merely authorized ... to forward customers’ checks to the company lockbox,” but did not have ‘“continuing access to the checks needed to cover [his] tracks.’ ” (Dist. Ct. Op. at 6.) The District Court reasoned that because “Golub simply had access to the checks, not responsibility for them[,] Section 3-405 does not shift the loss to Schrier Brothers,” and HUB is liable for conversion of the checks. (Id.) The District Court dismissed the claims against the drawee banks because Schrier Brothers had made an equivocal suggestion that it would consider dismissal absent evidence of negligence or other improper conduct and indeed failed to adduce such evidence.
II.
We exercise plenary review over the District Court’s grant of summary judgment, applying the same test as the Dis *487 trict Court. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976). To affirm the grant of summary judgment, we must be convinced that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law when the facts are viewed in the light most favorable to the non-moving party. Fed.R.Civ.P. 56(c).
III.

A. “Responsibility”

Under N.J. Stat. Ann. § 12A:3-420(a), “[a]n instrument is ... converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.” Under the normal operation of this Section, the bank bears the risk of loss when it makes or obtains payment on a fraudulently indorsed check. However, N.J. Stat. Ann. § 12A:3-405 will shift the burden of the loss to the named payee of a fraudulently indorsed check when the bank has acted in good faith and the indorsement is made by an employee of the payee entrusted with “responsibility” for the check.[1] “Responsibility” is defined under the same section as follows:
“Responsibility” with respect to instruments means authority to: sign or indorse instruments on behalf of the employer; process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition; prepare or process instruments for issue in the name of the employer; supply information determining the names or addresses of payees of instruments to be issued in the name of the employer; control the disposition of instruments to be issued in the name of the employer; or act otherwise with respect to instruments in a responsible capacity. “Responsibility” does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.
N.J. Stat. Ann. § 12A:3-405(a)(3).
It is undisputed that Golub was an employee of Schrier Brothers and that he fraudulently indorsed the checks. If Golub was an employee entrusted with responsibility for the checks under Section 12A:3-405(a)(3), then Schrier Brothers may bear the loss of the fraud, depending on whether HUB acted in good faith and exercised ordinary care. If he was not an employee with responsibility, then HUB bears the loss under Section 12A:3-420.
In Menichini v. Grant, we commented on the “newly enacted” but yet-to-take-effect revision of UCC Article 3 under Pennsylvania law and opined that revised Section 3-405 “generally denies an employer the ability to externalize the costs *488 of employee embezzlement, ‘virtually creating a bright line making fraudulent indorsements effective against the employer when employees who have “responsibility with respect to instruments” forge indorsements.’” 995 F.2d 1224, 1233 (3d Cir. 1993) (quoting John J.A. Burke, Loss Allocation Rules of the Check Payment System with Respect to Forged Drawer Signatures and Forged Indorsements: An Explanation of the Present and Revised UCC Articles 3 and 4, 25 U.C.C. L.J. 318, 371-72 (1993)). This principle justified placing on the employer rather than the bank the burden of the loss of the fraud committed by an employee of a legal support services firm who singly had the responsibilities of bookkeeping and receiving payments without supervision or any control mechanisms. Id. at 1235. A number of state courts construing UCC Section 3-405 have come to conclusions consistent with this interpretation. See, e.g., Smith v. AmSouth Bank, Inc., 892 So.2d 905 (Ala.2004) (concluding that an employee with authority to indorse and process instruments for deposit had responsibility); Halla v. Norwest Bank Minnesota, N.A, 601 N.W.2d 449, 452-53 (Minn.Ct.App. 1999) (concluding that an employee responsible for collecting and accounting for rent and damage deposits was entrusted with responsibility); Cable Cast Magazine v. Premier Bank, 729 So.2d 1165, 1167 (La.Ct.App.1999) (concluding that an employee with authority to open mail, prepare incoming checks for deposit, use the employer’s indorsement stamp on checks, and deposit checks with the bank had responsibility); see also Med Data Bureau, L.L.C. v. Bank of Louisiana, 2004 WL 3017215, — So.2d-,---, Nos. CA 2754 & CA 2755, 2003 La.App. LEXIS 3213, at *18-19 (La.Ct.App. Dec. 30, 2004) (finding that an employee with no authority to sign, indorse, process, prepare, or control the disposition of any checks received by the employer and with no job duties relating to the receipt or deposit of checks had no responsibility with respect to the checks).
The statute gives little direction as to the limits of “responsibility,” and even the “catch all” phrase at the end of the relevant section circles back to the concept of “responsible capacity.” The courts have not really defined “responsible” except to say that certain fact patterns do or do not fit within its bounds. We, too, are left to examine the facts and determine how we view Golub’s responsibility as it relates to the checks and monies entrusted to him in the course of his job.
Here, as noted above, Golub was authorized to accept payments from customers, both by check and in cash, and he was instructed to send anything he accepted to Schrier Brothers’ lockbox by express mail. Although Golub was not authorized to indorse any of the checks he accepted on behalf of Schrier Brothers, he had more than just occasional or fortuitous access to them. Schrier Brothers expressly authorized him, and indeed all its salespersons, to accept payments whenever customers tendered them. Regardless of the reasoning behind this policy or the company’s apparent preference for its customers to pay by sending a check directly to its lockbox, the fact remains that Golub regularly accepted payments, especially in the company’s street business, at the customer’s discretion and under circumstances where Schrier Brothers would have no way of monitoring when a payment had been made until it was received in the lockbox or, in the case of the converted checks, until no check had been received in the lockbox after a customer’s payment term expired. Additionally, with respect to cash payments, Golub was entrusted with obtaining and mailing money orders; this presented a clear opportunity for hard-to-detect de *489 falcation. As such, we disagree with the District Court’s conclusion that Schrier Brothers “merely authorized [Golub] to forward customers’ checks to the lockbox,” and, therefore, that he had access to the checks, but not responsibility for them. (Dist. Ct. Op. at 6.) The regularity and authorization of Golub’s practice of accepting checks coupled with the relative lack of control Schrier Brothers exercised over this practice leads us to conclude that Golub acted “in a responsible capacity” with respect to the checks, and, consequently, that Golub was an employee entrusted with “responsibility” with respect to the checks. N.J. Stat. Ann. § 12A:3-405(a)(3).
Further, we note that our conclusion is consistent with the policy underlying the shifting of the burden of the loss under this Section. Truly, this is a ease where, as the UCC commentary explains, “the employer is in a far better position to avoid the loss by care in choosing employees, in supervising them, and in adopting other measures to prevent forged indorsements on instruments payable to the employer.” U.C.C. § 3-405 cmt. 1. The risk of loss, therefore, “should fall on the employer rather than the bank that takes the check or pays it, if the bank was not negligent in the transaction.” Id.

B. HUB’s Good Faith and Deviation from the Standard of Ordinary Care

A bank may only invoke the protection of N.J. Stat. Ann. § 12A:3-405(b) if it “pays the instrument or takes it for collection” in “good faith.” Because the District Court determined that Golub did not have responsibility with respect to the checks, it did not reach the issue of HUB’s good faith.
Additionally, under N.J. Stat. Ann. § 12A:3-405(b), once it has been determined that the bank acted in good faith and that the employee had been entrusted with responsibility with respect to the fraudulently indorsed checks, the employer must bear the loss unless it can prove that the bank “fail[ed] to exercise ordinary care in paying or taking the instrument and that failure substantially contribute[d] to loss resulting from the fraud.” Upon such a showing, “the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.” N.J. Stat. Ann. § 12A:3-405(b). Because the District Court determined that Golub did not have responsibility with respect to the checks, it did not reach the issue of HUB’s negligence.
Consequently, in light of our contrary conclusion on the issue of responsibility, we will remand this case to the District Court for a determination as to whether HUB acted in good faith and, if so, exercised ordinary care.[2]
IV.
For the foregoing reasons, we will REVERSE the District Court’s judgment and REMAND for further proceedings consistent with this opinion.

. N.J. Stat. Ann. § 12A:3-405(b) provides: b. For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

. HUB presents as a final argument that Schrier Brothers does not have standing to assert this action in that if Golub merely had access to the checks (without responsibility for them), then he was not Schrier Brothers’ agent when he accepted them, and, as he failed to send the checks to lockbox, no one at Schrier Brothers ever had sufficient control over the checks within the meaning of the UCC to enforce rights to them. Because we conclude that Golub had responsibility with respect to the checks, this argument is moot and we need not pass upon it.