RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0080P (6th Cir.)
File Name: 02a0080p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

NEOGEN CORPORATION,
　　　　　*Plaintiff-Appellant,*

　　　　*v.*

NEO GEN SCREENING, INC.,
　　　　　*Defendant-Appellee.*

No. 00-2107

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 00-00037—Robert Holmes Bell, Chief District Judge.

Argued: January 31, 2002

Decided and Filed: March 6, 2002

Before: MARTIN, Chief Circuit Judge; GILMAN, Circuit
Judge; EDMUNDS, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Graham K. Crabtree, FRASER, TREBILCOCK,
DAVIS & DUNLAP, Lansing, Michigan, for Appellant.
Kenneth P. McKay, LAW OFFICES OF K. PATRICK

———————————

[*] The Honorable Nancy G. Edmunds, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

McKAY, Pittsburgh, Pennsylvania, for Appellee.
**ON BRIEF:** Graham K. Crabtree, Mark R. Fox, FRASER, TREBILCOCK, DAVIS & DUNLAP, Lansing, Michigan, for Appellant.  Kenneth P. McKay, LAW OFFICES OF K. PATRICK McKAY, Pittsburgh, Pennsylvania, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge.  In April of 2000, Neogen Corp. (Neogen), a Michigan corporation, filed suit in the Western District of Michigan against Neo Gen Screening, Inc. (NGS), a Pennsylvania corporation, alleging (1) trademark infringement, (2) federal dilution and unfair competition, (3) violation of the Michigan Consumer Protection Act, (4) violation of the Michigan Pricing and Advertising Act, and (5) unjust enrichment. The district court dismissed the suit in August of 2000 for lack of personal jurisdiction over NGS pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Neogen has appealed.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

Neogen is in the business of developing and marketing a range of health care, food, and animal-related products and services, including certain diagnostic test kits.  Its principal place of business is in Lansing, Michigan, but Neogen also has places of business in Florida, Illinois, and Kentucky. Neogen alleges that it has used the "Neogen" name and trademark continuously and extensively in interstate commerce, and that it has registered the mark with the U.S. Patent and Trademark Office.  Its website is found at www.neogen.com.

NGS performs diagnostic testing of blood samples from newborn infants.  A closely-held Pennsylvania corporation,

"traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

We recognize, of course, that this case comes to us in the context of a dismissal pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. This means that all of the facts stated above have been taken from Neogen's complaint, and that all of these facts have been construed in the light most favorable to Neogen. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). After the completion of discovery on remand, NGS will therefore remain free to further contest the issue of personal jurisdiction either by requesting an evidentiary hearing or by moving for summary judgment if such discovery reveals a material variance from the facts as stated in this opinion.

## III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

NGS has its sole place of business in Pittsburgh. Approximately ninety percent of the 215,000 tests that NGS performed in 1999 were generated through contracts with hospitals and governmental agencies around the world, none of which were located in Michigan. The remainder of the tests performed by NGS in 1999 were done at the request of individual physicians or coroners with whom NGS did not have a prior contract. Such customers not under contract can obtain testing services by telephoning or e-mailing NGS to request information and "filter blood collection forms." NGS then mails the collection form to the customer, who collects the sample and sends it back to the company in a preaddressed return envelope for testing. The customer can then obtain the test results through the mail, or on NGS's website with a password provided by the company. Customers pay for the tests by mailing a check to NGS's Pittsburgh office. NGS tested 14 blood samples from Michigan coroners in 1999, and anticipated about the same number for 2000. In earlier years, NGS also received and tested an undisclosed number of samples from Michigan residents.

NGS's only continuous advertising is through its website, www.neogenscreening.com. The website provides information about NGS's services, lists the e-mail addresses of personnel, and allows prospective customers to print blood-collection forms to be mailed along with blood samples to Pittsburgh. NGS's website is internationally accessible. Neogen claims that NGS's contacts with Michigan through its website and its approximately 14 yearly mail-order transactions with Michigan customers subject NGS to the jurisdiction of the United States District Court for the Western District of Michigan.

Based upon its conclusion that the exercise of personal jurisdiction over NGS would violate due process, the district court granted NGS's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The district court made its determination without first conducting an evidentiary hearing. Neogen appeals the dismissal. Because

the district court granted NGS's motion to dismiss, it did not consider NGS's motion to transfer venue on grounds of *forum non conveniens* pursuant to 28 U.S.C. § 1404(a).

## II. ANALYSIS

### A.  Subject matter jurisdiction

The district court had subject matter jurisdiction over this case based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  Although the district court also had subject matter jurisdiction over the federal trademark, dilution, and unfair competition claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367, both the parties and the district court have treated this case as though jurisdiction were based solely on diversity of citizenship.  We will therefore do the same for the purposes of this appeal.

### B.  Burden of proof

As the plaintiff, Neogen has the burden of establishing the district court's personal jurisdiction over NGS. *Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co., Ltd.,* 91 F.3d 790, 793 (6th Cir. 1996).  Because the district court did not conduct an evidentiary hearing on the issue of personal jurisdiction in considering NGS's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Neogen "need only make a prima facie showing of jurisdiction." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  Neogen can meet this burden by "establishing with reasonable particularity sufficient contacts between [NGS] and the forum state to support jurisdiction." *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  Under these circumstances, this court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989), and will construe the facts in the light most favorable to the nonmoving party in reviewing a dismissal pursuant to Rule 12(b)(2). *Id.*

economic injury to Neogen.  Such a causal connection satisfies the "arising from" requirement of *Mohasco.*

Finally, Neogen has alleged sufficient facts to present a prima facie case regarding the third *Mohasco* requirement—that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable"—because NGS's 14 yearly sales in Michigan constitute a "continuous and systematic" part of its business. *Id.*; *Int'l Shoe,* 326 U.S. at 317,  NGS anticipates from year to year that it will conduct a given level of sales in Michigan.  It conducted 14 tests for Michigan customers in 1999, and predicted a similar number for 2000.  Although NGS's tests for individual customers do not represent "continuing relationships and obligations" with those particular customers, its predictable yearly business in Michigan does represent such a continuing relationship with the state overall.

NGS's contact with Michigan customers through the mail and the wires is significant because it constitutes the doing of business there, rather than simply the exchange of information. *Sifers v. Horen*, 188 N.W.2d 623 (Mich. 1971) (holding that an Illinois professional corporation had "transacted business" in Michigan through its mail and telephone contacts with Michigan residents); *Cf. Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994) (holding that the defendant's contact with Ohio through letters and phone calls was insufficient to support jurisdiction because it was of a superficial quality).

Because NGS knew that it was doing business with Michigan customers, and performed part of its services in Michigan by mailing test results there and providing special passwords to Michigan customers, NGS could reasonably anticipate being haled into a court in Michigan.  Neogen has therefore overcome NGS's due process challenge by establishing a prima facie case that the exercise of personal jurisdiction over NGS by a court in Michigan does not offend

The district court also erred in concluding that the 14 yearly contracts with Michigan customers were insufficient to establish personal jurisdiction over NGS because they represented an insignificant percentage of NGS's overall business. The proper test for personal jurisdiction is not based on a "percentage of business" analysis as contended by NGS, but rather on whether the absolute amount of business conducted by NGS in Michigan represents something more than "random, fortuitous, or attenuated contacts" with the state. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted).

Neogen's allegations constitute a prima facie showing that NGS's contacts with Michigan customers are more than random or fortuitous events. Although customers from Michigan contacted NGS, and not the other way around, NGS could not mail test results to and accept payment from customers with Michigan addresses without intentionally choosing to conduct business in Michigan. This establishes that NGS chose to contract with customers from Michigan. Additionally, a part of NGS's service is the packaging of the results of the tests that it performs. When NGS mails these test results to its Michigan customers, or sends them a password to be used interactively on its website, NGS reaches out to Michigan to perform its services there. Neogen has therefore alleged facts which, when viewed in the light most favorable to Neogen, support a finding that NGS purposefully availed itself of the privilege of doing business in Michigan.

The second *Mohasco* requirement for the exercise of personal jurisdiction—that "the cause of action must arise from the defendant's activities [in the forum state]"—is also satisfied in the present case. *Mohasco*, 401 F.2d at 381. Neogen claims that the use of NGS's tradename on its website and its business contacts with Michigan residents under that name have caused a variety of economic harms in Michigan. Construing the facts in the light most favorable to Neogen, as we must for the purposes of this appeal, it is possible that NGS's activities in Michigan have caused

**C. The district court erred in concluding that Neogen failed to present a prima facie case of personal jurisdiction over NGS**

### 1. *Standard of review*

We review de novo a dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. *Nationwide Mut'l Ins. Co.,* 91 F.3d at 793. A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994).

### 2. *Neogen has presented a prima facie case that Michigan's "long-arm" statute authorizes limited personal jurisdiction over NGS*

Michigan's "long-arm" statute extends "limited" jurisdiction over nonresident corporations pursuant to Mich. Comp. Laws § 600.715, and "general" jurisdiction pursuant to Mich. Comp. Laws § 600.711. Limited jurisdiction extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect. *Third Nat'l Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). General jurisdiction, on the other hand, enables a court in Michigan to exercise jurisdiction over a corporation regardless of whether the claim at issue is related to its activities in the state or has an in-state effect. *Id.*

Mich. Comp. Laws § 600.715 extends limited personal jurisdiction over a nonresident corporation in claims "arising out of the act or acts which create any of the following relationships," including: "[t]he transaction of any business within the state" under § 600.715(1), "[t]he doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort" under § 600.715(2), and the "[e]ntering into a contract for services to be performed or for

materials to be furnished in the state by the defendant" under § 600.715(5).

The "transaction of any business" necessary for limited personal jurisdiction under § 600.715(1) is established by "the slightest act of business in Michigan." *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 906 (6th Cir. 1988) (citing *Sifers v. Horen*, 188 N.W.2d 623, 624 n.2 (Mich. 1971)). Neogen has presented a prima facie case that NGS transacted business in Michigan when it accepted blood for testing from Michigan, mailed the test results to Michigan, made the results accessible to its Michigan customers on its website, and accepted payment through the mail from Michigan. *Lanier*, 843 F.2d at 908. (holding that an Illinois professional corporation had "transacted business" in Michigan under § 600.715(1) through its mail and telephone contacts with Michigan residents).

The "arising out of" requirement of § 600.715 is satisfied because the alleged economic harm and trademark infringement that form the basis of Neogen's suit were directly related to NGS's transaction of business in Michigan. *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 231 (6th Cir. 1972) (finding limited personal jurisdiction under Ohio's similar long-arm statute where the acts forming the basis for the defendant's allegedly tortious conduct were "made possible" by the defendant's transaction of business in Ohio). Viewing the allegations in the light most favorable to Neogen, the economic harm of which it complains can be construed as resulting from NGS's conduct of business with Michigan residents over the wires, through the mail, and by use of the Internet.

Neogen has also presented a prima facie case that limited jurisdiction exists over NGS under § 600.715(2), based upon Neogen's allegation that the use of NGS's website and tradename in dealing with its Michigan customers has caused an adverse economic effect upon Neogen in Michigan. As the district court recognized, "[t]he language of the Michigan long-arm statute likely is broad enough to encompass the

The district court did not consider NGS's 14 yearly contracts with Michigan customers to be "purposeful availment." In so doing, it properly rejected Neogen's contention that NGS "must manifest a desire to not do business in Michigan." Rather, "'purposeful availment' is something akin to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities." *Khalaf*, 273 N.W.2d at 819.

Concluding that NGS's contacts were passive, the district court compared them to the actions of the defendant in *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997). In *Kerry Steel,* the defendant, an Oklahoma corporation, received unsolicited telephone calls from the plaintiff, a Michigan corporation, offering to sell the defendant a large quantity of steel coils. The defendant agreed to purchase the coils. After the defendant failed to pay for them, the plaintiff then attempted to bring suit in Michigan. The district court dismissed the complaint for lack of personal jurisdiction. In affirming the dismissal, this court concluded that the acceptance of a single unsolicited sales offer did not constitute the defendant's "reaching out" to Michigan to establish "continuing relationships and obligations" there. *Id.* at 151.

*Kerry Steel,* however, is readily distinguished from the present case. Unlike the one-time, unlikely-to-be-repeated Michigan transaction executed by the Oklahoma defendant in *Kerry Steel*, NGS reasonably expects to conduct a given level of business in Michigan year after year. Thus Neogen has presented a prima facie case that NGS has shown its intent to maintain "continuing relationships and obligations" in Michigan, *Burger King.* 471 U.S. at 476, such that its activities there are "continuous and systematic." *Int'l Shoe*, 326 U.S. at 317.

the placing of a product in the stream of commerce, and holding that a Missouri club that maintained a noninteractive website accessible in New York did not purposely avail itself of New York law).

In the present case, NGS's website consists primarily of passively posted information. The website advertises NGS's services and provides basic contact information. Several aspects of the website, however, support a finding of purposeful availment. When Michigan residents purchase NGS's services, for example, NGS provides them with passwords to access their test results on the website from Michigan. The granting of passwords to Michigan residents as part of a contract for NGS's services is an interactive usage showing that NGS has intentionally reached out to Michigan customers and enabled them to use NGS's services from Michigan. Another aspect of the website that supports purposeful availment, even if passive, is the fact that NGS holds itself out as welcoming Michigan business. On the website, NGS states that it will "do a genetic newborn screening test for any parent in any state," and enables Michigan residents to print out the testing form to send along with payment. NGS also posts on its website a chart showing the "results of screening 4,579 infant deaths with unknown cause," including a geographical breakdown of data that expressly includes Michigan. This chart suggests that NGS has used data collected from Michigan residents to complete this study, and holds itself out as having done so.

Whether NGS's website alone would be sufficient to sustain personal jurisdiction in Michigan, however, is a close question that need not be decided in this appeal. This is because NSG's website is not its only contact with the state. The website must be considered alongside NGS's other interactions with Michigan residents. Most significantly, when potential customers from Michigan have contacted NGS to purchase its services, NGS has welcomed their individual business on a regular basis.

Defendant's activity." In addition, Neogen has presented a prima facie case that limited jurisdiction exists under § 600.715(5) because NGS's blood-test transactions with Michigan residents constitute "entering into a contract for services to be performed or for materials to be furnished in the state by the defendant." Part of NGS's service is the packaging of the information revealed by the tests. When NGS provided passwords to Michigan customers or mailed them the test results, this constituted the performance of services and the furnishing of materials in the state within the meaning of § 600.715(5).

In order to be subject to general jurisdiction in Michigan, a nonconsenting, nonresident corporation such as NGS must have carried on "a continuous and systematic part of its general business" within Michigan. Mich. Comp. Laws § 600.711(3). We decline to decide the broader issue of whether general jurisdiction exists under the facts of this case, however, because Neogen has presented a prima facie case that limited jurisdiction is present.

### 3.   *The district court erred in concluding that due process would be violated by Michigan's exercise of limited personal jurisdiction over NGS*

Although Michigan's long-arm statute authorizes personal jurisdiction over NGS, a court in Michigan cannot exercise its personal jurisdiction in violation of NGS's constitutional right to due process. In order to survive NGS's motion to dismiss, Neogen was required to present a prima facie case that the district court's exercise of personal jurisdiction would not offend due process. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Neogen must therefore establish with reasonable particularity sufficient "minimum contacts" with Michigan so that the exercise of jurisdiction over NGS would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).

The minimum-contacts requirement is met if NGS "purposely avail[ed] itself of the privilege of conducting

activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Purposeful availment," the "constitutional touchstone" of personal jurisdiction, is present where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original), and where the defendant's conduct and connection with the forum are such that he "'should reasonably anticipate being haled into court there.'" *Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp.,* 471 U.S. at 475 (internal citation omitted).

This court has distilled these due process requirements into a three-part test. In order for a court to assert limited personal jurisdiction over an out-of-state defendant, the following three criteria must be met:

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Turning to the first *Mohasco* requirement, NGS contends that it did not purposefully avail itself of the benefits of Michigan law because, rather than reach out to Michigan, it engaged in nothing more than a "passive availment of Michigan opportunities." *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (Mich. 1978) (holding that

purposeful availment is something more than a "passive availment of Michigan opportunities"). Neogen, however, argues that NGS "purposefully availed" itself of the privilege of acting in Michigan by maintaining an "interactive" website, responding to business inquiries from Michigan residents, mailing completed test results to Michigan customers, and accepting payment by mail from these customers.

A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (using a "sliding scale" of interactivity to identify Internet activity that constitutes purposeful availment). In *Zippo,* the district court held that the defendant manifested its purposeful availment of the privilege of acting in Pennsylvania when it "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords," knowing that the result of these Internet contacts would be to perform services for Pennsylvania customers in part through the transmission of electronic messages to Pennsylvania. *Id.* at 1126. Such intentional interaction with the residents of a forum state, the *Zippo* court concluded, is evidence of a conscious choice to transact business with inhabitants of a forum state in a way that the passive posting of information accessible from anywhere in the world is not. *Id.*

The maintenance of NGS's website, in and of itself, does not constitute the purposeful availment of the privilege of acting in Michigan. An Internet website by its very nature can be accessed internationally. By maintaining a website in Pennsylvania, NGS is no more benefitting from the laws of Michigan than from the laws of any other state. The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an "attenuated" contact that falls short of purposeful availment. *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 300 (S.D.N.Y. 1996) (comparing the maintenance of a website to