**GLOBAL CROSSING TELECOMMUNICATIONS, INC.,**
Plaintiff,

v.

**WORLD CONNECTION GROUP, INC. Defendant.**

No. 03–71808.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 27, 2003.

Eric A. Linden, Sheila C. Cummings, Jaffe, Raitt, Detroit, MI, for Plaintiffs.

Gary A. Kozma, Detroit, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

## I. INTRODUCTION

Defendant moves for a transfer of venue to the Southern District of California pursuant to 28 U.S.C. § 1406(a), arguing that venue is improper in Michigan because this Court lacks personal jurisdiction over defendant, and alternatively, pursuant to 28 U.S.C. § 1404(a), arguing that even if venue is proper in Michigan, a transfer should be granted for convenience and in the interests of justice. Plaintiff opposes defendant's motion. For the reasons that follow, defendant's motion is GRANTED in part, and this case is transferred to New York.

## II. FACTUAL BACKGROUND

Plaintiff, Global Crossing Telecommunications, Inc. ("Global Crossing"), is a network service provider incorporated in Michigan with its principal place of business in New York.[1] Global Crossing devel-

ops, constructs, and markets fiber optic systems and services, telecommunications services, internet, and other voice and data services on a worldwide basis. Defendant, World Connection Group, Inc. ("WCG"), is incorporated in California and has its principle place of business in California. WCG provides consumers with prepaid phone cards that permit consumers to make domestic and international phone calls. WCG employs distributors of phone cards in several states, but allegedly has no distributers nor consumers in Michigan.

On January 28, 2002 the parties entered into a written contract for the sale of network transport and telecommunications services from Global Crossing to WCG for a minimum two-year period. Defendant contends, and plaintiff does not dispute, that contract negotiations were initiated by plaintiff's sales representative, Mike Gu, an employee of plaintiff's New York office, who approached defendant's representative, Lifeng Huang, at a trade show in New York in 2001. (Def. Br., Huang Aff.) Thereafter, contract negotiations via telephone and facsimile ensued between Mr. Gu in New York and Mr. Huang in California. (Def. Br., Huang Aff.) The contract was electronically delivered from New York to California, where Mr. Huang executed the contract and then mailed it to New York. (Def. Br., Huang Aff.)

Importantly, the contract contains a permissive forum selection clause which provides that disputes concerning construction and interpretation of the contract or the performance of either party's obligations under the contract "may...be submitted by either [party] to the appropriate jurisdiction of the state or federal Courts in the State of New York..." (Pl.Comp.Ex. A, ¶ 28.1.) The contract also contains a choice

---

1. At the time the contract in question in this case was signed, plaintiff's principal place of business was Southfield, Michigan, though plaintiff had offices in New York. Subsequent to the contract's formation, plaintiff's principal place of business moved to New York.

of law clause specifying that "the validity, interpretation and performance of [the] Agreement shall be governed by the laws of the State of New York...." (Pl.Comp. Exh. A, ¶ 27.1.) Thus, New York is a proper forum for this case.

On May 12, 2003, Global Crossing filed a diversity action in this Court against WCG for breach of contract, unjust enrichment, failure to pay on an account stated, and misrepresentation. Plaintiff's complaint alleges defendant failed to pay plaintiff for services rendered though plaintiff had provided defendant with invoices reflecting a debt owed to plaintiff under the contract in the amount of $410,484.79. (Pl.Br.Ex. B, ¶ 4.) WCG also allegedly falsely represented that it would use and pay for plaintiff's services for a minimum of two years in order to induce plaintiff to provide its services at a lower cost. (Pl.Compl.¶ 28.)

Defendant now moves for a transfer of venue pursuant to 28 U.S.C. § 1406(a) to the Southern District of California, arguing that venue is improper in Michigan because this Court lacks personal jurisdiction over defendant as required by 28 U.S.C. § 1391. Defendant argues that even if venue is proper, this Court should transfer venue to California pursuant to 28 U.S.C. § 1404(a) because defendant's place of business is California, contract negotiations took place from California, and its witnesses are located in California. In opposition, plaintiff argues that this Court has personal jurisdiction over defendant, and that therefore, venue is proper in

Michigan. Plaintiff relies in chief on communications between defendant and plaintiff's credit and collection department located in Southfield, Michigan to support its contention that defendant "conducted business" in Michigan, and should thereby be subject to personal jurisdiction in Michigan. In addition, plaintiff alleges that most of plaintiff's witnesses and relevant documents are located in Michigan.[2] (Pl. Br.Exh. B, ¶ 6–7.)

## III. ANALYSIS

■ A district court has the authority to transfer venue under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). Section 1404(a) permits a transfer to any district where the case could have been brought for "the convenience of parties and witnesses" and in the "interest of justice." 28 U.S.C. § 1404(a). Section 1406(a) enables a district court to transfer venue "in the interest of justice" when venue is improper[3] in the original forum to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Following a 1404(a) transfer, the state law of the transferor court remains controlling, while after a 1406(a) transfer, the state law of the transferee court controls. *Martin v. Stokes*, 623 F.2d 469, 472–3 (6th Cir.1980). *See also Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990).

■ A 1404(a) transfer may not be granted when a court lacks jurisdiction over a defendant. *Pittock v. Otis Elevator*

---

**2.** Of the sixteen Global Crossing employees who worked on WCG's account, nine reside and work in Michigan, two are located in New York, and five are located in Montana. (Pl.Br.Ex. B, ¶ 8–10.)

**3.** Pursuant to 28 U.S.C. § 1391(a), proper venue for an action in diversity is limited to the following: "(1) a judicial district where any defendant resides..., (2) a judicial district in which a substantial part of the

events...giving rise to the claim occurred..., or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). Under § 1391(c) a defendant corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

Co., 8 F.3d 325, 329 (6th Cir.1993) (citing *Martin*, 623 F.2d 469 at 474 (6th Cir. 1980)). *See also Van Dusen v. Barrack*, 376 U.S. 612, 634, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). However, a court may transfer venue under 1406(a) even if it lacks personal jurisdiction over a defendant. *Id.* (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)). Thus, the existence of personal jurisdiction over a defendant, or lack thereof, determines the proper statute under which a court may grant a transfer of venue.

A federal district court may exercise personal jurisdiction over a defendant if such jurisdiction is (1) authorized by the law of the state in which it sits, and (2) satisfies the requirements of the Due Process Clause of the Fourteenth Amendment. *Neogen v. Neo Gen Screening*, 282 F.3d 883, 887 (6th Cir.2002) (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994)). Michigan's long-arm statute authorizes the exercise of limited jurisdiction over a nonresident corporation for claims arising from a corporation's contacts with Michigan, including the "transaction of any business" within Michigan. M.C.L. § 600.715(1).

To satisfy the requirements of due process, the defendant's "minimum contacts" must be "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). The Sixth Circuit has established a three-part test to determine whether the assertion of personal jurisdiction over an out-of-state defendant satisfies due process:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Neogen*, 282 F.3d 883 at 889–890 (6th Cir. 2002) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). A plaintiff has the burden of establishing that a court has personal jurisdiction over a defendant. *Neogen*, 282 F.3d 883 at 887 (6th Cir.2002). In the absence of an evidentiary hearing on the issue of personal jurisdiction, a plaintiff need only make a prima facie showing of personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991).

In this case, plaintiff Global Crossing has not demonstrated the existence of contacts between defendant WCG and Michigan sufficient to authorize the exercise of personal jurisdiction under Michigan's long-arm statute nor the Due Process Clause. The relevant business transactions—the negotiation and execution of the contract upon which the present action is based—occurred not in Michigan, but between principals located in New York and California.[4] In addi-

---

4. Plaintiff's argument that WCG's communications with Global Crossing's credit and debt collection office in Michigan—the transactions upon which plaintiff's "Account Stated" claim is allegedly based—constitute sufficient contacts upon which to base the exercise of personal jurisdiction over WCG has no merit. First, plaintiff's "Account Stated" claim arises from defendant's failure to pay, and plaintiff's efforts to collect, money due under the con-

tract. At its heart, this action is not about the mere nonpayment of invoices, but about the breach of a contract to pay for services rendered. Thus the relevant transactions upon which jurisdiction may be based relate to the execution, negotiations, and terms of the contract.

Second, even if defendant's communications with plaintiff in Michigan satisfy Michigan's long-arm statute, the exercise of per-

tion, plaintiff can not demonstrate that defendant "purposefully availed" itself of the privilege of acting in the state of Michigan. WCG did not purchase services to be used in Michigan, did not solicit customers in Michigan, and did not employ distributors in Michigan. The contract's choice of law clause designating New York law as the governing law further undermines plaintiff's claims that defendant purposefully availed itself of the benefits and protections of Michigan law. *See LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1295 (6th Cir.1989). That the parties elected to invoke the benefits of New York law speaks in favor of letting a New York court, rather than a Michigan court, resolve the present dispute. *Id.* On these facts, the assertion of personal jurisdiction by Michigan over WCG would be unreasonable.

As a result of plaintiff's inability to establish a basis for personal jurisdiction over defendant, this Court finds that venue is improper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, and that 28 U.S.C. § 1406(a) is the appropriate statute under which a transfer of venue may be granted. For the sake of efficiency, fairness, and in the interest of justice, this Court elects to transfer this case to New York. The extent of defendant's contacts with New York and the fact that defendant contractually consented to be haled into New York court make it clear that this case "could have been brought" in New York at its inception, and strongly suggest that New York is a convenient forum for both parties.

sonal jurisdiction upon such contacts would offend due process. Such contacts, based upon the unilateral actions of plaintiff, are the type of "random," "fortuitous," and "attenuated" contacts upon which courts have refused to exercise personal jurisdiction over

## IV. CONCLUSION

Therefore, defendant's motion to transfer venue is GRANTED in part, and venue is transferred to New York pursuant to 28 U.S.C. § 1406(a).

**IT IS SO ORDERED.**

nonresident defendants. *See Kerry Steel, Inc. v. Paragon Industries, Inc.,* 106 F.3d 147 (6th Cir.1997); *LAK,* 885 F.2d 1293 (6th Cir. 1989).