## Richmond

UNITED VIRGINIA BANK

V.

E. L. B. TANK CONSTRUCTION, INC.

Record No. 810737.

January 20, 1984.

Present: All the Justices.

*Halford I. Hayes (J. Randolph Smith; Layne, Hayes & Smith,* on brief), for appellant.

*John B. Thompson (Christopher M. Malone; Thompson & Mc-Mullan,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this banking controversy, we consider the bank's obligation to its customer created by a deposit of money made by another person to the credit of the customer.

Appellee E. L. B. Tank Construction, Inc. filed suit in the trial court against appellant United Virginia Bank, seeking recovery of $8,000, plus interest from October 11, 1979, as reimbursement for funds wrongfully withdrawn from E.L.B.'s general checking account. The Bank admitted transferring the funds from the account, but denied the transfer was without authority. It alleged the withdrawal was at the request of William W. Flippo, Jr., whom the Bank contended established the account in question. A jury found in favor of E.L.B. in the foregoing amount. We

awarded the Bank an appeal from the February 1981 judgment order confirming the verdict.

The significant facts mainly are undisputed; according to fixed principles of appellate procedure, we will view any conflicting evidence in the light most favorable to E.L.B., the party armed with a jury verdict approved by the trial judge.

Flippo is owner of Flippo's and Company, a Richmond business with a plant in Hickory, North Carolina, where Flippo spends most of his time. The company is involved in the construction of huge oil storage tanks; it has been a customer of United Virginia Bank for a number of years. Edward L. Brown, a Richmond resident, is an experienced tank-erection crew foreman.

During the summer of 1979, Flippo suggested to Brown, who then was employed by Richmond Engineering Company, that Brown establish his own business to engage in the erection of tanks. Indicating they had mutually beneficial business objectives, Flippo suggested that Brown become a union, minority subcontractor for Flippo's, which was not fully union-affiliated. Flippo's sought a subcontractor with union connections to enable it to secure contracts in union territory. Brown agreed to the proposal and E.L.B. was incorporated in August or early September 1979 with Brown as the sole stockholder; Flippo had no financial interest in the corporation.

Brown, who at the time had no equipment or substantial financial resources, orally agreed to weld and rig storage tanks using fabricated material supplied by Flippo's. Flippo promised to pay E.L.B amounts to cover the union wage of its crew for the number of hours required to erect the tanks. In addition, Flippo agreed to pay E.L.B. a bonus of $1,000 per tank, as well as sums to cover its employees' union contributions, travel, subsistence, and payroll taxes.

Initially, E.L.B. established a corporate account at another Richmond bank. This arrangement immediately proved unsatisfactory because it involved issuance weekly of a check on Flippo's account at United Virginia Bank and a deposit at E.L.B.'s bank for E.L.B. to pay its employees weekly. Brown was not receiving timely deposits; this resulted in late disbursements to E.L.B. employees.

Sometime in early September of 1979, upon Flippo's recommendation, two accounts, a general account and a payroll account, were opened at the Mechanicsville branch of United Virginia

Bank in the name of E.L.B. This was accomplished by a telephone call from Flippo to Garnett L. Riddle, Jr., the branch manager. Using a routine previously established in connection with Flippo accounts maintained at the Bank, Flippo was to order by telephone transfer of funds, as needed, from a Flippo account to the E.L.B. general account. Two signature cards and two corporate resolutions, all dated September 4, 1979, were mailed to the Bank during the week of September 4. They authorized the Bank to recognize only the signatures of Brown and his wife, Adelaide, in the payment of funds or the transaction of any business "for this account." Both cards were marked "Payroll acct.," but the corporate resolutions carried no account designation.

Brown and Flippo agreed that Brown was to submit documents on a weekly basis showing the employees' hours worked and rates of pay to Charlotte Walker, a Flippo employee in the Richmond area. After verifying the employment information, Walker would prepare, for one of the Browns' signature, individual checks on the E.L.B. payroll account payable to the workers. Brown would transfer from the E.L.B. general account to the payroll account funds sufficient to cover the payroll, leaving in the general account sums to cover payroll taxes when due.

From September 13 through October 3, 1979, the Bank honored at least eight checks drawn on E.L.B.'s general account and at least 25 checks drawn on the corporate payroll account. All checks were signed by one of the Browns only. In the same general period, approximately $19,000 was deposited to the general account of E.L.B. from the Flippo account upon verbal instructions of Flippo to the Bank.

Also during the period, Riddle, who had no direct contact with the Browns, made repeated requests of Flippo that signature cards and corporate resolutions be submitted to the Bank for E.L.B.'s accounts. Riddle believed the Bank had not received such documents. After this suit was filed, the cards and resolutions dated September 4 were discovered at the Bank's Operations Center in Richmond.

On October 11, 1979, without notice to and without knowledge of the Browns, the Bank deducted $8,000 from E.L.B.'s general account upon Flippo's oral order, transferring the amount to Flippo's account. Flippo testified he ordered the transfer because of "pressure" from Riddle for the signature cards and corporate resolutions. According to Flippo, Riddle indicated that, unless the

documents were filed promptly, the Bank would discontinue the practice of permitting Flippo to use telephone transfers for all Flippo accounts with the Bank. Flippo, however, also indicated that he acted because controversy had developed between him and Brown. This suit ensued in May of 1980, after the Bank refused Brown's demand for reimbursement of the amount withdrawn.

The Bank, through counsel retained by Flippo who apparently is considered the real party in interest, contends it withdrew properly the sum in controversy. The Bank argues there was a deposit contract established between it and Flippo. It asserts that the deposits were subject to the conditions of the contract, one of the terms being that Flippo would have authority over the account. The Bank contends such authority was not revoked before it honored Flippo's oral withdrawal order. The Bank's theory of nonliability is erroneous; the "depositor" in this case was E.L.B. and not Flippo.

A "depositor" is ordinarily a person "who delivers to or leaves with a bank money subject to his order, either upon time deposit or subject to check." 5A *Michie on Banks and Banking* § 3, at 18 (1973) (footnotes omitted). But when one person makes a deposit of money in a bank to the credit of another, with the latter's consent, the latter person becomes the "depositor" and a debtor-creditor relationship is created between the bank and the "depositor." *Brown* v. *Daugherty*, 120 F. 526, 531-34 (S.W.D. Mo. 1903); *American Lumber Sales Co.* v. *Fidelity Trust Co.*, 127 Me. 65, 70, 141 A. 102, 104 (1928); *Goodloe* v. *Fidelity Bank*, 183 N.C. 315, 316, 111 S.E. 516, 517 (1922); *Cozart* v. *Western Nat. Bank*, 194 S.W. 644, 646 (Tex. Civ. App. 1917); *Endlich* v. *Bank of Black Creek*, 200 Wis. 175, 179, 227 N.W. 866, 867 (1929); 5A *Michie on Banks and Banking* § 8, at 33 (1973). *See Bernardini* v. *Central National Bank*, 223 Va. 519, 521, 290 S.E.2d 863, 864 (1982); *Deal* v. *Merchants & Mechanics Savings Bank*, 120 Va. 297, 299, 91 S.E. 135, 135 (1917). Such depositor becomes a "customer" within the meaning of the Uniform Commercial Code, § 8.4-104(e), and the bank is liable for any payment from that account not authorized by the customer.

In this case, the evidence manifestly shows that the status of E.L.B. was that of customer and depositor as to the general corporate account in issue. As early as the week of September 4, the Bank possessed corporate resolutions that designated only the

Browns as persons authorized to sign checks "or other orders for the payment of money" from E.L.B. corporate accounts. In addition, for a period of almost one month, the Bank properly honored at least eight checks drawn on the general account signed for the corporation only by the Browns. The evidence shows also the account was established in the name of the corporation on the books of the Bank, and bank statements were rendered to the corporation monthly beginning September 28, 1979.

And during the whole period, according to the evidence, the funds deposited on Flippo's order in the account to the credit of E.L.B. were monies properly due the corporation for services provided by E.L.B. to Flippo's and Company pursuant to subcontracts. Moreover, the evidence is uncontradicted that Brown consented to the deposits by Flippo as the means to discharge the debts of Flippo's and Company to E.L.B.

Furthermore, at the time the withdrawal in question was made, the Bank had no written authority permitting it to recognize Flippo's signature or his verbal order on the account. While the evidence shows that E.L.B. had authorized Flippo to make the deposits to the credit of the corporation, any implied authority he possessed to make withdrawals plainly was revoked by the corporate resolutions specifying that the Browns had sole authority over account withdrawals. Thus, the Bank's action, not authorized by its customer, was improper.

The rulings of the trial court on the instructions were consistent with the foregoing views. Therefore, it is unnecessary to review individually the Bank's challenges to instructions given and refused.

Accordingly, we find no error in the judgment below and it will be

*Affirmed.*