**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0627n.06

**No. 09-6492**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| CONTOUR INDUSTRIES, INC., | ) | **FILED** |
|  | ) | ***Aug 26, 2011*** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR THE |
| U.S. BANK, N.A., | ) | EASTERN DISTRICT OF TENNESSEE |
|  | ) |  |
| Defendant-Appellant. | ) |  |

Before: GIBBONS and WHITE, Circuit Judges, and OLIVER, Chief District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Over a three-year period, employee Timothy Lee Byrd embezzled approximately $400,000 from employer Contour Industries, Inc. ("Contour") by depositing company checks into his personal bank account at U.S. Bank. After discovering the fraud, Contour sued U.S. Bank for conversion. U.S. Bank moved for summary judgment and later for judgment as a matter of law and a new trial under Tennessee's "fictitious payee rule," Tenn. Code Ann. § 47-3-405(b). Section 47-3-405(b) provides a defense for banks against claims of conversion: a bank that deposits or pays an employee's fraudulently endorsed check in good faith may avoid liability if the employer entrusted that employee with responsibility over the instruments at issue. The district court denied the bank's motions, and we affirm.

_____

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

I.

Contour is a company located in Surgoinsville, Tennessee, that manufactures glass components for the appliance industry. Timothy Lee Byrd ("Byrd") began working for Contour as a plant production employee. In 2001, Byrd was promoted to the front office to work as a planner; his duties included taking customer orders and planning glass production orders. Later, Byrd was promoted to planning manager, where he received and processed checks sent to Contour by its customers for deposit into the company's account. As a front office management-level employee, Byrd had access to Contour's accounting system and to the company's deposit stamp, which he used to endorse company checks. After receiving a customer's check, processing it for deposit, and delivering it to a Contour officer for payment, Byrd was required to update Contour's accounting system to indicate that the customer had paid its invoice.

Over the course of approximately three years, Byrd embezzled sixty-two checks payable to Contour by depositing them into his personal account at U.S. Bank. To commit the fraud, Byrd altered Contour's deposit stamp by concealing both the company's account number and the restrictive endorsement, "For Deposit Only." Byrd endorsed the checks to himself by forging the signature of Contour's accountant and writing "Pay to the order of" Timothy Byrd. He then deposited the checks into his personal account at U.S. Bank in Rogersville, Tennessee. To conceal the fraud, Byrd accessed the relevant customer's account and moved the date of the invoice forward so that the forged checks did not appear past due on the company's aged receivable report. Although the aged-receivable reports reflected the altered dates, Contour's management did not review the reports of accounts that were not past due.

In May 2007, Contour employees discovered that Byrd had embezzled $399,839, and the company attached Byrd's bank account and recovered $10,969. In addition, Byrd had repaid $5,437 during the course of the embezzlement.

At trial, U.S. Bank acknowledged that it erred in depositing the forged checks into Byrd's personal account. In her deposition, Jackie Hill, an operations specialist, testified that the bank typically requires approval from a company's supervisor when a check, made payable to the company, is deposited into a personal account. This policy is recorded in the bank's procedural manual, which states that "[c]hecks made payable to a business must be endorsed in the same name . . . and must be deposited into the business's account unless a check cashing resolution is on file for the business." It is undisputed that Contour, which was not a customer of U.S. Bank, did not have a written check-cashing resolution. However, in Byrd's case, teller supervisor Deborah Barrett granted approval to deposit the first check based upon a conversation in which a Contour employee allegedly instructed the bank to deposit the check into Byrd's personal account in order to resolve an error in Byrd's paycheck. Bank tellers mistakenly interpreted Barrett's approval of the first check as a blanket exception to the bank's policy and deposited the remaining checks into Byrd's personal account.

## II.

On September 17, 2007, Contour filed suit against U.S. Bank in the Circuit Court for Hawkins County alleging a claim under the Tennessee Uniform Commercial Code ("TUCC") for breach of fiduciary duty and common-law claims for negligence and punitive damages. U.S. Bank removed the case to federal district court on the basis of diversity jurisdiction and moved for

judgment on the pleadings on the grounds that Contour failed to state claims under the TUCC and that Contour's common-law claims were preempted by the TUCC, which afforded the exclusive avenue for relief. On July 3, 2008, the district court granted U.S. Bank's motion with respect to Contour's common-law negligence claim and otherwise denied it. The court also ordered Contour to show cause regarding its common-law claim for punitive damages, noting that Contour "ha[d] not pled the UCC conversion provision, Tenn. Code Ann. § 47-3-420." On November 20, 2008, the court denied Contour's common-law claim for conversion and ordered the company to properly plead the claim under the TUCC in order to proceed.

In December 2008, Contour filed an amended complaint alleging a claim for conversion pursuant to § 47-3-420(a), which states that "[a]n instrument is also converted if . . . a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." Under § 47-3-420(b), "the measure of liability is presumed to be the amount payable on the instrument." U.S. Bank, in turn, sought summary judgment under the "fictitious payee rule," § 47-3-405(b), which provides a defense against liability for conversion where an employer has entrusted a dishonest employee with responsibility over its negotiable instruments and where the bank deposited the forged check in good faith. The bank argued that Contour entrusted Byrd with responsibility over its accounting system; that Byrd fraudulently endorsed the name of Contour's accountant on the stolen checks; and that the bank was therefore a holder in due course of the checks it deposited into Byrd's personal account. Contour maintained that U.S. Bank was negligent in depositing the checks and thus did not act in good faith under § 47-3-405(b).

On July 15, 2009, the district court denied U.S. Bank's motion for summary judgment and

dismissed Contour's claim for negligence. As to the bank's defense under § 47-3-405(b), the district court found that Contour entrusted Byrd with responsibility over the checks because he "processed checks for deposit and had the authority to endorse the checks for deposit using Contour's stamp." The court also found that Byrd made a fraudulent endorsement, defined "in the case of an instrument payable to the employer" as "a forged endorsement purporting to be that of the employer." Tenn. Code Ann. § 47-3-405(a)(2). However, the court concluded that a material issue of fact existed as to whether U.S. Bank had acted in good faith when it deposited the stolen checks because the "jury could infer that . . . US Bank acted recklessly and not in good faith in depositing the checks" into Byrd's personal account in violation of its policy governing the deposit of company checks.

Two days later, U.S. Bank moved to reconsider or clarify the findings in the district court's opinion denying the bank's motion for summary judgment on the grounds that "reckless conduct alone does not equal bad faith" and that the bank owed no duty of care to Contour, a non-customer. In the alternative, U.S. Bank sought to certify the question of the scope of bad faith under the TUCC to the Tennessee Supreme Court.

The district court denied these motions. The court noted that the Tennessee Supreme Court has defined the "honesty in fact" standard of good faith as the "absence of a knowing or reckless disregard of a customer's rights." *See Bank/First Citizens Bank v. Citizens & Assocs.*, 82 S.W.3d 259, 264 (Tenn. 2002) (internal quotations omitted). And, it observed that the Tennessee Supreme Court, in deciding whether a bank acted in good faith, has evaluated whether the bank knowingly or recklessly "disregarded the rights of *anyone*." *Id.* at 265 (emphasis added). The district court thus concluded that, under Tennessee law, "the rights involved in a showing of good or bad faith do not

have to be based upon a right that stems from the customer relationship; rather it can come from some other source."

At the close of trial, U.S. Bank moved under Fed. R. Civ. P. 50(a) for judgment as a matter of law on the grounds that no reasonable jury could find that the bank acted recklessly and, alternatively, that the bank owed no duty of care to non-customers. The district court denied this motion, concluding that "whether or not the bank acted in good faith . . . [was] an issue for the jury to determine."

The jury found U.S. Bank liable for conversion and awarded damages to Contour in the amount of $368,036, and the court entered judgment on August 25, 2009. After trial, U.S. Bank renewed its motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) or, in the alternative, moved for a new trial under Fed. R. Civ. P. 59. In the Rule 50(b) motion, the bank argued that the district court misapplied the Tennessee Supreme Court's definition of good faith; that the duty "to act in good faith is not an independent legal duty"; and that the evidence was insufficient as a matter of law to support the jury verdict because Contour's evidence demonstrated, at most, that the bank acted negligently. In the Rule 59 motion, the bank challenged the court's jury instructions. On November 4, 2009, the district court denied these motions, and U.S. Bank timely appealed.

### III.

The parties dispute the standard of review applicable to U.S. Bank's appeal from the district court's denial of its motions for summary judgment, judgment as a matter of law, and a new trial. U.S. Bank argues that *de novo* review applies to all of its motions because the district court's decision was based upon an incorrect legal interpretation of good faith, as defined by Tennessee law.

Contour contends that this court typically does not review the denial of a motion for summary judgment after a full trial on the merits and that our review is therefore foreclosed. Contour acknowledges, however, that the trial court's legal determinations concerning a party's Rule 50 motions are reviewed *de novo*.

Recently, in *Ortiz v. Jordan*, 131 S. Ct. 884, 888–89 (2011), the Supreme Court held that a party may not "appeal an order denying summary judgment after a full trial on the merits" because that "order retains its interlocutory character as simply a step along the route to final judgment." The Court reasoned that "[o]nce the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion." *Id.* at 889. Bound, as we are, by *Ortiz*, we therefore cannot review the denial of U.S. Bank's Rule 56 motion for summary judgment.

We have likewise held:

> [I]n cases where an appellant made a Rule 56 motion for summary judgment that was denied, makes those same arguments in a Rule 50(a) motion at the close of evidence that was also denied, lost in front of a jury, then renewed its arguments in a rejected Rule 50(b) motion after the entry of judgment, we will review only the denial of the Rule 50(b) motion.

*K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 174 (6th Cir. 1996). Because U.S. Bank challenged the district court's definition of good faith in both of its Rule 50 motions for judgment as a matter of law, we review only the denial of its Rule 50(b) motion. *See Acree v. Tyson Bearing Co., Inc.*, 128 F. App'x 419, 424–25 (6th Cir. 2005).

In a diversity case, as here, "a state law standard of review is applicable only when a Rule 50 challenge is mounted to the sufficiency of the evidence supporting a jury's findings," but "[n]o deference is appropriate in diversity cases to a trial court's resolution of legal questions." *K & T*

No. 09-6492
*Contour Indus., Inc. v. U.S. Bank*

*Enters., Inc.*, 97 F.3d at 176. "Legal determinations, whether made in a diversity case or in a federal question case, will always be reviewed *de novo*." *Id.* In this case, although U.S. Bank challenged the sufficiency of the evidence in its Rule 50(b) motion, the bank has not renewed that challenge on appeal. Rather, the bank's appeal is limited to the legal question of the definition of good faith under the TUCC. We review this question *de novo.*

IV.

U.S. Bank contends that it properly asserted a defense under the "fictitious payee rule," Tenn. Code Ann. § 47-3-405(b), and was entitled to judgment as a matter of law with respect to Contour's claim for conversion under § 47-3-420. Section 47-3-405(b) provides:

> For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee . . . makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person.[1]

_____

[1] Tennessee's version of § 3-405 varies from the model Uniform Commercial Code (UCC). Specifically, the model code's provision contains a second sentence:

> If the person paying the instrument or taking it for value or collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

UCC § 3-405(b) (2004). States that have adopted the model code therefore apply a burden-shifting test for assessing liability: after the bank has demonstrated that it paid or deposited the checks in good faith, the employer must show that the bank failed to exercise ordinary care, which contributed to the loss. *See, e.g.*, *Schrier Bros. v. Golub*, 123 F. App'x 484, 489 (3d Cir. 2005) (describing the burden-shifting test under N.J. Stat. Ann. § 12A:3-405(b)). Tennessee, however, has not adopted the model code's comparative fault provision under § 3-405(b). *See C-Wood Lumber Co., Inc. v.*

Thus, to prevail under § 47-3-405(b), U.S. Bank was required to prove three elements: (1) Contour entrusted Byrd, its employee, with responsibility over the checks at issue; (2) Byrd fraudulently endorsed the checks; and (3) the bank deposited the checks in good faith. The parties acknowledge that Contour entrusted Byrd with responsibility over the checks. And, the parties acknowledge that Byrd fraudulently endorsed the checks at issue when he altered Contour's deposit stamp, forged the signature of Contour's accountant, and wrote "Pay to the order of" Timothy Byrd. The parties' dispute therefore hinges upon the third element: whether U.S. Bank deposited the checks in good faith, as defined by the TUCC.

With respect to good faith, U.S. Bank contends that a lack of good faith under Tennessee law can be shown either by proof of dishonesty or "by proof that the bank knowingly or recklessly disregarded a *customer's rights.*" The bank argues that it did not act dishonestly and that the "knowing or reckless disregard" standard is inapplicable to Contour, a non-customer. U.S. Bank argues that, in denying its Rule 50(b) motion, "[t]he district court created new duties that banks owe to non-customers that lack any support in Tennessee law."

A.

Our examination of the meaning of "good faith" under the TUCC begins with the language of the statute. Although the TUCC largely tracks the language of the model UCC, its definition of good faith varies from the model code. The model UCC § 1-201(b)(20) defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." In contrast,

---

*Wayne Cnty. Bank*, 233 S.W.3d 263, 277 n.33 (Tenn. Ct. App. 2007).

Tenn. Code Ann. § 47-1-201(b)(20) defines good faith only as "honesty in fact in the conduct or transaction concerned" and does not require adherence to "reasonable commercial standards of fair dealing." But, despite the Tennessee legislature's departure from the model definition, § 47-1-201 includes the official commentary to the model code, which elaborates upon the good-faith standard prescribed by UCC § 1-201(b)(20). Thus, given the inconsistency between the definition of good faith in § 47-1-201(b)(20) and the explanation of this definition in the accompanying commentary, the language of the TUCC alone does not make clear the exact parameters of good faith under Tennessee law.

We look next, as did the district court, to the definition of good faith, as described by the Tennessee Supreme Court. In *Glazer v. First American National Bank*, 930 S.W.2d 546, 548 (Tenn. 1996), the Tennessee Supreme Court discussed the meaning of good faith in the context of Dr. Glazer's claims for conversion and consequential damages against a bank after an employee embezzled in excess of $100,000 from him and deposited the money into her personal bank account. As here, the employee had authority to process checks on Dr. Glazer's behalf, and she committed the fraud by forging the doctor's endorsement, cashing the checks, and altering patient data in the office computer to hide the embezzlement. *Id.* at 547. Dr. Glazer unsuccessfully sought the bank's assistance in tracking the checks cashed by the employee and sued the bank in the Shelby County Chancery Court. *Id.* at 547–48. The trial court awarded Dr. Glazer both the value of the checks and $100,073 in consequential damages based upon the bank's alleged failure to assist him in investigating the fraud. The Tennessee Court of Appeals affirmed this award. *Id.* at 548.

On appeal, the Tennessee Supreme Court reversed the judgment of the appellate court as to

consequential damages on the ground that Dr. Glazer failed to prove that the bank had acted in bad faith. *Id.* 550. The court noted that § 47-1-201(b)(19) defines good faith as "honesty in fact in the conduct or transaction concerned" and that bad faith "encompass[es] not only instances of outright deception and untruthfulness" but also includes "a knowing or reckless disregard of a customer's rights."[2] *Id.* at 549–50. But, to prove bad faith, Dr. Glazer was required to "show that the bank was under some duty, whether . . . based on contract, statute, regulation, or judicial decision, to assist him in investigating the fraudulent scheme." *Id.* at 550. Because Dr. Glazer had not proven "that the bank's refusal to cooperate in the investigation violated any contractual or other legal right of his," he was not entitled to consequential damages. *Id.*

The Tennessee Supreme Court also discussed the meaning of good faith in *First Citizens Bank*, where a depository bank asserted the negligent drawer defense under Tenn. Code Ann. § 47-3-406 against a claim for conversion.[3] There, an employee who worked as a branch manager for Allied Mortgage obtained $50,000 in investments from the land-development partnership, Citizens and Associates ("Citizens"), based upon her false representation that the mortgage company was opening a franchise in Tennessee. *First Citizens Bank*, 82 S.W.3d at 260–61. The employee

---

[2]The definition of good faith under the TUCC is now codified at Tenn. Code Ann. § 47-1-201(b)(20).

[3]Under Tenn. Code Ann. § 47-3-406(a), a drawer of a check "whose failure to exercise ordinary care substantially contributes to . . . the making of a forged signature on an instrument is precluded from asserting the . . . forgery against a person who, in good faith, pays the instrument or takes it for value or for collection." Under § 47-3-406(b), if the party asserting preclusion "fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss," the loss is then allocated between the parties.

endorsed the checks in the name of Allied Mortgage and deposited them into her personal bank account. *Id.* at 261. After Citizens sought repayment, the bank denied liability and filed suit for declaratory judgment, and Citizens counterclaimed, arguing that the bank failed to exercise ordinary care in depositing the checks. *Id.* The trial court concluded that both parties failed to exercise ordinary care and allocated the loss between them. *Id.* The court noted that "the bank was negligent in permitting the deposit of checks made payable to a corporation into a personal account, especially when the corporation itself did not have an account with the bank." *Id.* The Tennessee Court of Appeals affirmed this judgment.

The Tennessee Supreme Court reversed, concluding that the bank took the checks in good faith but "did not show that the failure of [Citizens] to exercise ordinary care substantially contributed to the actual making of the forged endorsements." *Id.* at 262. In evaluating the meaning of good faith, the court cited *Glazer* with approval, stating that "[t]his Court has defined the 'honesty in fact' standard to mean an absence of a 'knowing or reckless disregard of a customer's rights.'" *Id.* at 264 (quoting *Glazer*, 930 S.W.2d at 549). Although Citizens was not a customer of the bank, the court considered whether the bank had acted with knowing or reckless disregard of Citizens' rights when it deposited the checks drawn by Citizens into the employee's account. The court concluded that the bank had acted in good faith: "[W]hile [the bank] was certainly negligent in permitting the deposit of a check made payable to a corporation into an individual account, no evidence shows that it knowingly disregarded the rights of anyone. Nor does . . . the evidence support a finding that the bank acted recklessly in this regard." *Id.* at 264–65.

B.

U.S. Bank argues that the district court erred by expanding the "knowing or reckless disregard" test for good faith to non-customers of the bank. The bank maintains that the Tennessee Supreme Court in *Glazer* and *First Citizens Bank* established two tests for evaluating good faith: customers "must show a knowing or reckless disregard of their rights," but non-customers must show "outright deception or untruthfulness."[4] And, because "there is no contention that U.S. Bank deceived anyone," the bank argues that it was entitled to prevail as a matter of law against Contour, a non-customer.

The definition of good faith under Tennessee law is not a model of clarity. However, we do not find in the cases the distinction drawn by U.S. Bank between customers and non-customers. It is true, as the bank notes, that the Tennessee Supreme Court in *First Citizens Bank* cited *Glazer* with approval, reaffirming that "honesty in fact" means the "absence of a 'knowing or reckless disregard of a customer's rights.'" 82 S.W.3d at 264 (quoting *Glazer*, 930 S.W.2d at 549). But, in evaluating whether the bank at issue had acted in good faith when it deposited checks drawn by Citizens—a non-customer—into the employee's personal account, the court did not limit its inquiry to a discussion of the bank's truthfulness. Rather, the court concluded that the bank neither knowingly nor recklessly "disregarded the rights of anyone." *Id.* at 265. Although U.S. Bank maintains that

---

[4]U.S. Bank misstates the burden of proof. Under § 47-3-405(b), the bank must show that it acted in good faith, that the employer entrusted the employee with responsibility over the negotiable instruments at issue, and that the employee fraudulently endorsed them. *See, e.g.*, *Cont'l Cas. Co. v. Fifth/Third Bank*, 418 F. Supp. 2d 964, 972 (N.D. Ohio 2006) (stating that to assert a defense under § 3-405, the bank must show: "1) it deposited the checks into [the employee's] account in good faith; and 2) [the employer] entrusted . . . its employee[] with responsibility with respect to premium checks received by him").

the Tennessee Supreme Court's "offhand" reference to "the rights of anyone" in *First Citizens Bank*

cannot be read as a decision to modify the scope of *Glazer*, we find the court's application of the

good-faith standard instructive: the court applied the "knowing or reckless disregard" standard to

decide whether the bank had acted in good faith, notwithstanding that Citizens was a non-customer.

Furthermore, neither § 47-1-201(b)(20), which defines good faith, nor § 47-3-405(b), which imposes

a good-faith requirement under the "fictitious payee rule," draws any distinction between customers

and non-customers or suggests that the bank's measure of good faith depends upon the plaintiff's

status as a customer. We therefore agree with the district court's conclusion that the meaning of

good faith under Tennessee law does not hinge upon the plaintiff's status as a customer or non-

customer.

In support of its interpretation, U.S. Bank contends that courts "routinely conclude that there

is no general duty owed by a bank to a non-customer." *See, e.g.*, *Eisenberg v. Wachovia Bank, N.A.*,

301 F.3d 220, 227 (4th Cir. 2002) (bank owed no duty of care to non-customer victim of a fraudulent

investment scheme); *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926(CSH), 1999 WL 47239,

at *13 (S.D.N.Y. Feb. 3, 1999) (bank owed no duty of care to non-customer and therefore was not

liable in negligence for "failing to protect the [non-customer's] funds from fraudulent diversion");

*Weil v. First Nat'l Bank of Castle Rock*, 983 P.2d 812, 815 (Colo. App. 1999) (bank owed no general

duty of care to inquire as to employees' authority to open an account in a sole proprietorship's

unregistered trade name and therefore was not liable in negligence to the owner of the

proprietorship); *Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 665 (R.I. 1998) (bank owed no duty to

detect that a non-customer payee's indorsement had been forged and thus was not liable in

negligence to the payee); *Pa. Nat'l Turf Club, Inc. v. Bank of W. Jersey*, 385 A.2d 932, 936 (N.J. Super. Ct. App. Div. 1978) (bank was not liable in negligence to payee for balance due on nine checks that were returned due to insufficient funds). However, we find these cases inapt because they are based in the common-law tort of negligence, in which the plaintiff must demonstrate the existence of a duty owing from the defendant to the plaintiff in order to prevail, and because they do not address the meaning of good faith as it applies under the jurisdiction's commercial code.

In contrast, federal- and state-court opinions discussing the meaning of good faith under UCC § 3-405 have not indicated that the bank's good-faith obligations vary based upon the plaintiff's status as a customer or non-customer. In *Continental Casualty*, the district court evaluated the requirements of Ohio's "fictitious payee rule," Ohio Rev. Code Ann. § 1303.47, which follows the burden-shifting test used under the model code. 418 F. Supp. 2d at 972. The court noted that "[a] finding of bad faith is warranted if a bank for an extended period of time and despite bank policies dictating otherwise permits a person to deposit stolen checks to an account that does not belong to the payee." *Id.* at 973; *see also McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 762 (3d Cir. 1990) (finding that a bank did not act in good faith, and thus could not assert a defense under § 3-405, when it "deliberately violat[ed] its own stated policies by cashing at least 120, often extremely large, third-party checks totalling between $3-4 million"); *Pavex, Inc. v. York Fed. Sav. & Loan Ass'n*, 716 A.2d 640, 646 (Pa. Super. Ct. 1998) (noting that "bad faith may properly be found where there has been either a gross violation of bank policies over an extended period and/or involving large sums, or a conscious and deliberate decision to ignore the existence of a fraudulent scheme" and further noting that "the determination of whether a party has acted in good faith is

generally a question for the finder of fact").

In *Pavex*, payroll clerk Dorothy Heck generated nearly 900 checks that were drawn upon Pavex's account and "payable to various current and former employees . . . for services which were never rendered." 716 A.2d at 641. Pavex maintained its bank accounts at C.C.N.B. Bank, but Heck and her husband deposited the forged payroll checks into their personal accounts at York Federal's Camp Hill Bank ("York Federal"). *Id.* at 641–42. Although employees of York Federal "discussed contacting [Pavex] to determine whether Heck had permission to deposit employee payroll checks in her personal account," the bank manager chose not to do so out of financial privacy concerns. *Id.* at 642. After Pavex filed suit for conversion and breach of warranty, a jury returned a verdict in the company's favor for $167,385, which represented a partial victory and reflected the jury's "considered belief that after the passage of a certain amount of time Defendant York Federal was no longer acting in good faith in dealing with the checks." *Id.* at 643. This award was affirmed on appeal; the court noted that York Federal did not act in good faith under UCC § 3-405 because the bank "violated its own policies for over two years in a scheme involving almost 900 transactions and over a quarter of a million dollars" and because "the bank's branch manager deliberately chose to ignore perceived irregularities in Ms. Heck's transactions." *Id.* at 646. The court did not find that the analysis of good faith under UCC § 3-405 turned upon Pavex's non-customer status.

Here, U.S. Bank's appeal from the denial of its Rule 50(b) motion does not challenge the sufficiency of the evidence supporting the jury's verdict but rather is limited to a legal question: whether, under Tennessee law, the test for analyzing good faith depends upon the plaintiff's status

as a customer or non-customer.[5] On this question, our best reading of good faith under TUCC § 47-3-405(b) leads us to the conclusion that Tennessee law does not distinguish between customers and non-customers in defining good faith. We therefore hold that the district court did not improperly expand the "knowing or reckless disregard" standard of good faith to non-customers of the bank.

C.

U.S. Bank also argues that Contour "cannot establish the bank's bad faith because the bank did not owe any applicable duty to Contour." This argument is drawn from *Glazer*, in which the Tennessee Supreme Court remarked that, in order to obtain consequential damages based upon the bank's failure to assist in the doctor's investigation of his employee's fraud, "Dr. Glazer must also show that the bank's conduct actually violated his *rights*. In other words, he must show that the bank was under some duty, whether it be based on contract, statute, regulation, or judicial decision, to assist him in investigating the fraudulent scheme." 930 S.W.2d at 550. The district court noted that Contour "had rights to its own funds" and that § 47-3-405(b), by its terms, imposes a statutory obligation upon banks to act in good faith when paying a check or taking it for value or collection.

---

[5]In defining the scope of good faith under the UCC, the Second Circuit has also clarified that "[t]he good faith requirement incorporates standards of honesty and fair dealing but not of negligence. In other words, the good faith requirement does not impose a standard of care but, rather, a standard of fair dealing." *J. Walter Thompson, U.S.A., Inc. v. First BankAmericano*, 518 F.3d 128, 139 (2d Cir. 2008) (emphasis omitted). The court therefore rejected the plaintiff's argument that the bank acted in bad faith when the plaintiff "ha[d] not alleged that [the bank] acted unfairly or dishonestly." *Id.* In support of U.S. Bank, the Tennessee Bankers Association similarly argues that the bank's employees "were negligent but not willfully blind" and therefore did not act in bad faith. However, as noted above, U.S. Bank has not challenged whether there was a sufficient showing of reckless conduct to support the jury's verdict; instead, the bank argues that the recklessness standard does not apply to Contour, a non-customer.

The bank contends that the district court's reasoning is circular: "In essence, the district court found that U.S. Bank failed to act in good faith by failing to act in good faith."

U.S. Bank's claim regarding the rights and duties running between a plaintiff and bank is based upon a misinterpretation of the Tennessee Supreme Court's discussion in *Glazer*, in which the court discussed good faith in the context of the consequential damages awarded to the doctor based upon the bank's refusal to assist him in investigating his employee's fraud. 930 S.W.2d at 550. With respect to the bank's alleged duty to investigate the fraud, the court noted that Dr. Glazer "point[ed] to nothing in the depositary contract" or in any "statute, regulation, or judicial decision charging the bank with any such duty" and that consequential damages were therefore improper. *Id.* The court did not hold, as U.S. Bank argues, that the doctor was required to demonstrate any separate right to the embezzled funds. In fact, Dr. Glazer was awarded $135,780 for the "face amount of all checks that were introduced into evidence," and the Tennessee Supreme Court did not disturb this judgment on appeal. *Id.* at 548. Thus, the bank's reliance upon *Glazer* is misplaced.

We find the bank's argument that the district court imposed a "general duty of care" upon banks unpersuasive. The district court did not create a general duty of care when it denied U.S. Bank's Rule 50 motions. Rather, it determined that a reasonable jury could find that the bank did not act in good faith when it deposited the forged checks into Byrd's personal account over a three-year period without the requisite check-cashing resolution from Contour.

V.

In its final argument, U.S. Bank challenges the district court's jury instructions, arguing that the court improperly "allowed the jury to find bank liability to a non-customer based on mere

recklessness, untethered to any recognized customer right or duty owed by the bank." In this Circuit, "it is well established that jury instructions are reviewed as a whole and that an issue as to instructions is a question of law that is reviewed *de novo*." *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 365 (6th Cir. 2005). Our task "is not to read the instructions word for word to find an erroneous word or phrase, but rather to review the instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision." *Id.* (internal quotations omitted). However, "[a]ppeals as to specific jury instructions . . . that were not given by the district court are reviewed for abuse of discretion." *Id.* Here, we review the bank's claim regarding the jury instructions *de novo* because its argument is based upon a claim of legal error, not upon the district court's refusal to issue a specific requested instruction.

At trial, the district court instructed the jury that U.S. Bank could defend against Contour's conversion claim by demonstrating "that it took the checks in good faith." The court stated that "[g]ood faith means honesty in fact in the conduct of the transaction involved" and that "[h]onesty in fact means an absence of a knowing or reckless disregard of a person's rights." The court also stated that reckless conduct "is characterized by the creation of a substantial and unjustifiable risk [of] harm to others and by a conscious and sometimes deliberate disregard for or indifference to that risk." And, the court noted that recklessness is characterized by "conscious indifference to the consequences of an act." With respect to U.S. Bank's good-faith defense under § 47-3-405(b), the court advised the jury that "U.S. Bank must show that it did not act with a reckless disregard to Contour's right to the funds[] when it took the checks for deposit with the forged endorsements."

-19-

We find that these instructions adequately informed the jury of the pertinent considerations regarding U.S. Bank's defense to conversion. The jury was aware that U.S. Bank could avoid liability by demonstrating that it deposited the checks at issue in good faith. The jury was also aware that the good-faith requirement obligated the bank to show that it had neither knowingly nor recklessly disregarded Contour's "right to the funds." And, the jury was advised that "reckless" conduct requires more than negligence and involves conscious disregard for a substantial risk. Although U.S. Bank contends that this definition departed from the Tennessee Supreme Court's interpretation of good faith in *Glazer* and *First Citizens Bank*, the bank has not cited any case law drawing a distinction between customers and non-customers for the purpose of evaluating a bank's good faith. Furthermore, the district court's instructions to the jury largely incorporated the bank's proposed jury instructions, which stated that "'honesty,' as used in the definition of 'good faith,' includes the lack of a 'knowing or reckless disregard' of someone's rights."

The district court's instructions apprised the jury of the "relevant considerations" applicable to the bank's good-faith defense and provided the jury with a basis in law for reaching its decision. *Williams*, 400 F.3d at 365. A new trial is not warranted on the basis of faulty jury instructions.

VI.

For the forgoing reasons, we affirm the district court.