RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0293p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

SFS CHECK, LLC,

>
> *Plaintiff-Appellant,*

No. 14-1104

*v.*

FIRST BANK OF DELAWARE, et al.,

>
> *Defendants-Appellees.*

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Flint
No. 4:12-cv-14607—Terrence George Berg, District Judge.

Decided and Filed:  December 16, 2014

Before:  SILER, SUTTON, and McKEAGUE, Circuit Judges.

─────────────────

**COUNSEL**

─────────────────

**ON BRIEF:**  Raymond R. Burkett, BURKETT & ASSOCIATES, Livonia, Michigan, for
Appellant.  Christopher A. Cornwall, DICKINSON WRIGHT, PLLC, Detroit, Michigan,
Richard L. Scheff, MONTGOMERY MCCRACKEN WALKER & RHOADS LLP,
Philadelphia, Pennsylvania, for Appellees.

─────────────────

**OPINION**

─────────────────

SILER, Circuit Judge.  The main issues in this case are (1) whether answering a phone
call establishes personal jurisdiction in the state from which the phone call was made; and
(2) whether a bank owes a duty of care to an identity theft victim who is not a customer.  SFS
Check, LLC (SFS), a Michigan financial services company, processed all its transactions through
its account at Fifth Third Bank.  Fifth Third discovered that illegal gambling transactions were

1

being processed through an account associated with SFS at First Bank of Delaware (FBD).  Fifth Third terminated SFS's account.  SFS soon went bankrupt.  It sued FBD and some of its officers, alleging negligence and fraud.  The district court found that (1) it lacked personal jurisdiction over all individual defendants; (2) FBD owed no duty of care to SFS because SFS was not a customer; and (3) SFS failed to adequately plead a claim of fraud.  SFS now appeals the dismissal of its complaint.  We **AFFIRM**.

**I.**

SFS is a defunct company run by Charles Kopko in Michigan.  It provided financial transaction processing and electronic funds transfers to companies engaged in e-commerce.  It processed those transactions through its account at Fifth Third, which is not a party to this suit.  In 2010, Fifth Third discovered that FBD was processing illegal gambling funds through SFS's account at Fifth Third and notified SFS that it was closing SFS's account immediately.  Losing this account crippled SFS's ability to do business, and it soon went bankrupt.

In August 2010, Kopko telephoned FBD and spoke to Sian Bastable, FBD's vice-president for e-commerce.  According to Kopko, Bastable said FBD did not have an account in SFS's name.  In October 2010, SFS received a grand jury subpoena related to a federal investigation of the gambling transactions done in SFS's name.  When Kopko called Bastable again to discuss the subpoena, Bastable admitted that FBD had an account in SFS's name and that the board of directors was aware of this account.

In 2012, SFS filed a complaint in federal court for negligence and fraud against FBD, Bastable, and FBD's individual directors.  The defendants filed a motion to dismiss, arguing that Michigan courts lacked personal jurisdiction over the individual defendants under Fed. R. Civ. P. 12(b)(2) and that SFS failed to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6).

After conducting discovery, SFS filed a motion for leave to file a second amended complaint, which included its proposed second amended complaint.  The district court denied SFS's motion and dismissed the case.

**II.**

One motion under review is a motion for leave to amend under Fed. R. Civ. P. 15(a)(2). Although the rule encourages courts to give leave to amend "when justice so requires," *id.*, courts need not give leave to amend when doing so would be futile. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Amending would be futile if a proposed amendment would not survive a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

A district court's decision to dismiss a case for failure to state a claim for which relief can be granted under Rule 12(b)(6) is a decision we review de novo. *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013). Whether a court has personal jurisdiction over a defendant is also a question of law we review de novo. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014). Likewise, whether a defendant owed a duty of care to a plaintiff is a legal question subject to de novo review. *See Graves v. Warner Bros.*, 656 N.W.2d 195, 205-06 (Mich. Ct. App. 2002).

To survive a Rule 12(b)(6) motion, a complaint must comply with the pleading requirements of Rule 8(a), which, among other things, requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A pleading must go beyond "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'[N]aked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

**III.**

The first issue concerns specific personal jurisdiction. The district court found that while it had jurisdiction over FBD, it lacked personal jurisdiction over the members of FBD's board of directors and over Bastable.

To survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff must prove that jurisdiction is proper over each defendant individually.

*Beydoun*, 768 F.3d at 504. When, as here, the district court allows discovery on the motion, the court should consider the facts offered by both parties and rule according to the preponderance of the evidence. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). A federal court may only exercise jurisdiction over a party in a diversity-of-citizenship case when such jurisdiction is both authorized by state law and permitted by the Due Process Clause of the Fourteenth Amendment. *Beydoun*, 768 F.3d at 504.

SFS argues that jurisdiction over Bastable exists under Michigan's "long-arm" statute, specifically Mich. Comp. Laws § 600.705(2). This provision provides for personal jurisdiction over nonresidents for claims "arising out of" acts that include "doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort." *Id.* SFS's theory is that when Bastable incorrectly told Kopko that FBD did not have an account in SFS's name, this negligent or fraudulent failure to divulge critical information harmed SFS in Michigan.

Even assuming that Bastable's statement over the telephone satisfied Michigan's long-arm statute, the court's jurisdiction remains limited by the federal Due Process Clause. The relevant question under the Due Process Clause is whether the nonresident defendant possessed such "minimum contacts" with the forum state that exercising jurisdiction would comport with "traditional notions of fair play and substantial justice." *Beydoun*, 768 F.3d at 505 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This court has its own three-pronged test for assessing the existence of "minimum contacts":

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Purposeful availment happens when the defendant personally takes actions that create a "substantial connection" with the forum state such that he can "reasonably anticipate being haled into court there." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the

corporation. *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000). We now apply this rubric to SFS's allegations against Bastable.

SFS alleges only two contacts between Bastable and Michigan. First, Bastable answered Kopko's phone call in August 2010. SFS says Bastable's failure to divulge critical information during this call contributed to the demise of the company. Second, SFS says Bastable returned a phone call from Kopko in October 2010. SFS does not allege that the information conveyed in this phone call was inaccurate.

We agree with the district court that these phone calls do not establish purposeful availment on the part of Bastable. The August phone call resulted from the "unilateral activity" of Kopko. A person like Bastable does not create a "substantial connection" with another state merely by answering the phone. Furthermore, the injury to SFS — Fifth Third's decision to terminate SFS's account — happened before either of these telephone conversations. The injury that preceded the phone calls could not have arisen from the phone calls. Nor would we consider the exercise of jurisdiction over Bastable reasonable under these circumstances. Bastable did not have the minimum contacts necessary to support the jurisdiction of a Michigan court.

**IV.**

SFS's first claim against FBD is for negligence. The elements of negligence under Michigan law are duty, breach of that duty, causation, and damages. *Brown v. Brown*, 739 N.W.2d 313, 316-17 (Mich. 2007). The threshold question of whether the defendant owed a duty to the plaintiff is a question of law to be decided by the court. *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 590 (Mich. 2004). The almost-universal law in this country is that banks owe a duty of care only to their own customers. *Contour Indus., Inc. v. U.S. Bank, N.A.*, 437 F. App'x 408, 416 (6th Cir. 2011); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (explaining that banks generally do not owe non-customers a duty to protect them from customers' intentional torts); *El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 907 (W.D. Mich. 2010) ("Michigan law, in accord with the universal rule in this country, holds that a bank's relationship is with its customer and that the bank owes third parties no duty of care . . . ."); *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 307 N.W.2d 761, 765 (Mich. Ct. App. 1981).

SFS does not claim that it opened an account at FBD. Instead, it alleges that an unnamed third party opened a fraudulent account at FBD in SFS's name.**1** SFS asks this court, as a matter of public policy, to adopt a new rule that banks owe a duty of care to a person whose name is attached to a fraudulent account.

SFS relies on *Patrick v. Union State Bank*, 681 So. 2d 1364 (Ala. 1996), in which the Alabama Supreme Court held that a bank owes a duty of care to a person in whose name an account is opened to ensure that the person is not an imposter. But *Patrick* "has met with near universal disapproval." *Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1123 & 1124 n.12 (N.J. 2009) (finding "no published decision and but one unpublished case that follows *Patrick* without qualification"). Even the Alabama Supreme Court has admitted that their "inquiry in *Patrick* was not properly focused." *Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905, 911 (Ala. 2004). Although we recognize the serious threat posed by identity theft, we are not prepared to impose a new duty on banks, particularly one that has been rejected by courts across the country. *See, e.g.*, *Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 278 (S.C. 2003) (declining to recognize a new tort action against banks for "negligent enablement of imposter fraud").

In the alternative, SFS argues that it was a customer of FBD. The Uniform Commercial Code, as adopted by Michigan, defines "customer" as a person "having an account with a bank or for whom a bank has agreed to collect items." Mich. Comp. Laws §§ 440.4104, .4605. Courts have distilled a number of factors for analyzing whether a person qualifies as a bank "customer." These include whether (1) the person is named on the account; (2) the person opened the account; (3) the person deposited money into the account; (4) the person has authority to withdraw funds from the account; and (5) the person receives statements of account from the bank. *Hanover Ins. Co. v. M&T Bank*, 783 F. Supp. 2d 809, 816 (E.D. Va. 2011) (citing *Collins v. First Union Nat'l Bank*, 636 S.E.2d 442, 445-46 (Va. 2006); *Radin v. Crestar Bank*, 457 S.E.2d 65, 66 (Va. 1995); *United Va. Bank v. E.L.B. Tank Constr., Inc.*, 311 S.E.2d 773, 775 (Va. 1984)).

---

**1**The district court expressed skepticism that FBD ever had an account in SFS's name. According to the court, SFS admitted during oral argument that after reviewing thousands of FBD records it found no evidence of any FBD account in SFS's name. *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 769 n.4 (E.D. Mich. 2013). We assume for the sake of analysis that SFS's allegations regarding the name on the fraudulent account are true.

SFS argues that it qualifies as FBD's customer because SFS "had an account with FBD that was fraudulently opened." It asserts that the account had to have been set up using SFS's name and tax identification number. However, SFS does not allege that it opened the account, that it deposited money in the account, that it had authority to withdraw funds from the account, or that it received statements from the account. We decline to adopt a new rule that being the victim in a fraudulent scheme involving an imposter bank account causes the victim to become a customer of the bank.

## V.

SFS's second claim is for fraud. Under Michigan law,

> The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567-68 (Mich. 2012). "[F]raud requires a misrepresentation about the past or present." *Lawrence M. Clarke, Inc. v. Richco Constr., Inc.*, 803 N.W.2d 151, 162 (Mich. 2011).

Fed. R. Civ. P. 9(b) establishes a heightened pleading standard for fraud allegations: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purposes of Rule 9(b) are (1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent "fishing expeditions"; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466-67 (6th Cir. 2011). Accordingly, to satisfy Rule 9(b), a plaintiff must generally (1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

Here, SFS has alleged that FBD, through Bastable, intentionally misrepresented to Kopko during the August 2010 telephone conversation that FBD did not have an account in SFS's name. However, as the district court found, SFS has not successfully alleged that the company's injury resulted from the alleged fraud. The phone call happened after Fifth Third bank notified SFS that it had decided to cancel the account. The injury that led to SFS's bankruptcy occurred before Bastable and Kopko ever communicated. Taking the facts as pleaded, SFS has not stated a fraud claim for which relief can be granted.

SFS's alternative theory of fraud is that FBD knew as early as May 2010 that its SFS account was processing illegal gambling transactions. SFS says FBD should have discovered that the account was fraudulent and contacted SFS. Again, this fails to articulate a plausible fraud claim. A failure to investigate the nature of the alleged SFS account or to hunt down and contact the real SFS does not amount to an intentional "misrepresentation about the past or present." *Lawrence M. Clarke, Inc.*, 803 N.W.2d at 162.

**AFFIRMED.**